ALLEN *v.* STATE.

Opinion delivered April 19, 1902.

1. INSTRUCTION—ASSUMING DISPUTED FACT.—An instruction in a prosecution for murder "that, the killing being proved to have been done by the defendant, the burden of proving the circumstances of mitigation that justify or excuse a homicide shall devolve on the accused," etc., is not objectionable as assuming that defendant killed deceased, if it appears from other instructions that the court meant to state a hypothetical case. (Page 341.)

2. SAME.—An instruction that if the defendant attempted to prove an alibi the burden is on him to establish it by a preponderance of the testimony is not objectionable as calculated to make the impression that the attempt had failed. (Page 342.)

3. INSTRUCTION AS TO DYING DECLARATION—OPINION.—It was not error to refuse an instruction that a mere expression of opinion is not admissible as a dying declaration if the declaration sought to be excluded was a statement of fact, and not an expression of opinion. (Page 342.)

4. JUROR—CHALLENGE.—In a criminal case the refusal of the court to permit defendant to challenge a juror peremptorily after accepting him is not error if no abuse of discretion is shown. (Page 342.)

5. APPEAL—WAIVER OF ERROR.—The admission of incompetent evidence is no ground for reversal unless assigned as ground of the motion for a new trial. (Page 343.)

Appeal from Miller Circuit Court.

JOEL D. CONWAY, Judge.

Affirmed.

*Joe E. Cook,* for appellant.

The second instruction was erroneous. Sand. & H. Dig., § 1643; 2 Thomp. Trials, § 2315. Instruction number nine invades the province of the jury. 52 Ark. 265; 50 Ark. 391-417; 55 Ark. 393; 2 Thomp. Trials, § 2326. The statement of deceased as to who shot him was only an opinion. 52 Ark. 347; 39 Ark. 225; 1 Greenl. Ev. § 159. Every instruction should be hypothetical. 31 Ark. 699; 14 Ark. 287; 59 Ark. 419; 16 Ark. 569; Thomp. Trials, § 47. It is dangerous to rely upon instructions as abstract principles. 37 Ark. 580; 9 Ark. 212; 13 Ark. 317; 52 Ark. 47. An instruction which may be misleading is erroneous. 18 Ark. 521. Evidence of dying declarations, like any other evidence, is the subject of appropriate instructions. 63 Ark. 531; 62 Ark. 558. It was error not to permit the defendant to challenge juror Adams. 63 Ark. 533; 58 Ark. 361. The court erred· in admitting testimony of a witness taken at former trial without first showing that the witness was absent or dead. 20 Ark. 216; 38 Ark. 305; 60 Ark. 550; 22 Ark. 372; 32 Ark. 192; 33 Ark. 539; 58 Ark. 363.

*George W. Murphy, Attorney General,* for appellee.

Instruction number two was proper and not abstract. Sand. & H. Dig., § 1643. The objection to the evidence of witness Thompson was waived. 67 Ark. 531.

BATTLE, J. Ossey Allen was indicted by a grand jury of the Miller circuit court for murder in the first degree, charged to have been committed by feloniously, with malice aforethought, with deliberation and premeditation, killing John Gayton, in the county of Miller, in this state, on the 31st day of March, 1900, by shooting him with a pistol. To this indictment the defendant pleaded not guilty, and was tried and convicted of murder in the first degree. He moved for a new trial, which was denied; and he then appealed to this court.

The evidence adduced by the state tended to prove, substantially, as follows: John Gayton and Lottie Gayton were husband and wife. They resided in Miller county, in this state. On the night of the 31st of March, 1900, John Gayton was absent from his home. In his absence the appellant visited his wife, in the night, at their home, and was in a room with her, and had been for an hour or longer when John Gayton returned. No one was in the room with her except appellant. It was not very dark. One witness said it

was a "starlight night." John Gayton made an effort to enter the
room through a window, when the appellant shot him. John then
went into the room of his mother-in-law, in the same building.
The appellant, barefooted at the time, leaped out of the window,
and ran away, carrying with him his shoes. John lived about three
hours after he was shot, and died. Before dying he said it was not
necessary to send for a doctor, that he was "bound to die," and that
Ossey Allen shot him.

The appellant adduced testimony tending to prove an alibi.

The court gave to the jury ten instructions at the request of
the state, the first three of which were almost literal copies of sec-
tions 1639-1645 of Sandels & Hill's Digest. The second, which
was given over the objections of the appellant, was as follows:
"The court further instructs the jury that, the killing being proved
to have been done by the defendant, the burden of proving the cir-
cumstances of mitigation that justify or excuse a homicide shall
devolve on the accused, unless by proof on the part of the prosecu-
tion it is sufficiently manifest that the offense committed only
amounted to manslaughter, or that the accused was justified or
excused in commiting the homicide." In this connection the court
also instructed the jury as follows:

"16. You are instructed that if there is any reasonable
hypothesis arising out of the evidence and circumstances in this
case, except the one that the defendant, and not someone else,
killed the deceased, then the defendant is entitled to the benefit
of such hypothesis, and he ought to be acquitted."

"18. You are instructed that it devolves upon the state to
establish by competent and sufficient proof every material allegation
in the indictment, and that the defendant killed the deceased is a
material allegation; and it devolves upon the state to prove and
establish it beyond a reasonable doubt; and if the state fails to do
so, it is your duty to acquit the defendant."

"3. You are instructed that, before you can convict the de-
fendant in this case, it must appear from the evidence, beyond a
reasonable doubt, that the defendant, and not somebody else, com-
mitted the crime; but it must show beyond a reasonable doubt
that the defendant committed the crime.

"4. You are instructed that mere probabilities are not suffi-
cient to warrant a conviction, nor is it sufficient that the greater
weight of evidence supports the theory, nor is it sufficient that upon

the doctrine of chances it is more probable that the defendant is guilty than that he is innocent; but, to warrant you in the conviction of the defendant, he must be proved to be guilty so clearly and conclusively that there is no reasonable theory under the evidence upon which he can be acquitted."

And the court, at the request of the state, over the objection of the appellant, gave an instruction numbered nine, which was as follows:

"9. The court further instructs you that if you believe from the evidence the defendant in this case has attempted to prove an alibi, that is, that he was elsewhere when the killing occurred, at the time of the killing, the burden is upon him to establish the alibi by a preponderance of the testimony; and unless you entertain a reasonable doubt of the defendant's guilt, growing out of all the testimony and the circumstances in the case, it is your duty to convict the defendant."

And in this connection gave the following instruction at the request of the appellant:

"14. As regards the defense of an alibi, the jury are instructed that the defendant is not required to prove that defense beyond a reasonable doubt to entitle him to an acquittal. It is sufficient if all the evidence in the case raises a reasonable doubt of his presence at the time and place and commission of the crime charged."

The appellant asked the court to instruct the jury as follows:

"A statement by one who has been shot, respecting who it was who inflicted the wound, is admissible as a dying declaration, if made at a time he did not expect to survive the injury, but is of no more weight than if the deceased was present and testified. But a mere expression of an opinion as to who shot the deceased is not a dying declaration, and is no evidence whatever. Therefore, if you find from the evidence that at the time deceased was shot the one that shot him was in a dark room at night, and that it was impossible for the deceased to have seen or known who shot him, and that his statement as to who did the shooting was an opinion, then you will not consider the evidence of his dying statements in arriving at your verdict."

And the court gave the first sentence, and refused to give the remainder, as an instruction to the jury. In this connection the court also instructed the jury as follows:

"10. If you believe from the evidence that the deceased, after he was shot, made a statement as to who shot him, and under what

circumstances the shot was fired, and that at the time he made such statement he believed he would die from the effects of said shot, and entertained no hope of recovery, then you will give such statements, if proved, as much weight as if he were duly sworn, present and testifying in the case.

"11. The defendant is presumed to be innocent of this charge until proved beyond a reasonable doubt to be guilty. This presumption of innocence is not a mere form, to be disregarded by the jury at pleasure. It is an essential, substantial part of the law of the land, and binding upon the jury in this case; and it is the duty of the jury to give to the defendant the full benefit of this presumption, and to acquit him, unless you feel compelled to find him guilty as charged, and the evidence so convinces you beyond all reasonable doubt of his guilt."

The objection of the appellant to the second instruction given at the request of the state is that it assumes that he killed John Gayton. But we do not think so. By it the court evidently meant to say if the killing was proved to have been done by the defendant, "the burden of proving the circumstances of mitigation that justify or excuse a homicide shall devolve on the accused," etc. This is made apparent by other instructions given upon the same subject. In one instruction it told the jury that if there was "any reasonable hypothesis arising out of the evidence and circumstances in this case, except the one that the defendant, and not someone else, killed the deceased, then the defendant is entitled to the benefit of such hypothesis, and he ought to be acquitted;" and in another, that it "devolved upon the state to prove and establish it beyond a reasonable doubt, and if the state failed to do so, it was their duty to acquit the defendant." In one instruction it told the jury that, before they could convict the appellant, "it must appear from the evidence, beyond a reasonable doubt, that the defendant, and not somebody else, committed the crime; but it must show beyond a reasonable doubt that the defendant committed the crime;" and in another, "to warrant you in the conviction of the defendant, he must be proved to be guilty so clearly and conclusively that there is no reasonable theory under the evidence upon which he can be acquitted." If the court meant to say that the killing in this case was proved to have been done by the appellant, why did it seek to impress upon the jury, in these instructions, that it was their duty to acquit, unless the evidence so clearly and conclusively showed

that appellant killed the deceased as to exclude every reasonable hypothesis that it was done by any other person? The court, instead of assuming that the killing was proved to have been done by the appellant, cautioned the jury against finding that it was, unless they found that the evidence so conclusively proved his guilt as to exclude every reasonable doubt. The instructions, as a whole, clearly indicate that the court never meant to say that the killing of the deceased was proved to have been done by the appellant.

Appllant objects to the ninth instruction given at the request of the state because of the word "attempted." He says that the court should not have said "attempted to prove an alibi," because the · expression was calculated to make the impression upon the minds of the jury that the court was of the opinion that the appellant only attempted and had failed to prove an alibi. But the instruction is not reasonably susceptible of this interpretation. It does not say that he had attempted to prove an alibi, or say that there had been a failure to make such proof. It did not intimate any opinion of the court upon the subject, but left the question as to whether the alibi was proved to the jury.

Appellant insists that the court erred in denying, in part, his request for an instruction, as before stated, because the dying statement of deceased should not be considered as evidence if it was an expression of an opinion. But the statement was not made as an expression of an opinion. The deceased declared most emphatically that the appellant shot him; that he knew it because he was very near to him at the time. Under the instructions of the court, it went to the jury for what it was worth, and it was their duty to disregard it if they believed it was untrue. So there was no prejudicial error in the refusal of so much of the request as was not granted.

Appellant says that the trial court erred in refusing to permit him to peremptorily challenge Lucian Adams, a juror, after he had been accepted by the state and defendant. The record shows that as each person was accepted as a juror by the state and defendant, the ·clerk swore him, and the court then directed him to take his seat in the "jury box." Adams was the second person selected and sworn. After four others were selected and sworn, appellant undertook to challenge him peremptorily, but the court refused to allow him to do so. Was this an error?

Under the statutes of this state persons summoned as jurors,

when called to serve in criminal cases, may be examined under oath touching their qualifications. As each one is called, he is first examined by the state, and then by the defendant, and, after such examination is completed, if the juror is found by the court to be competent, the state shall challenge him peremptorily or accept him; if accepted by the state, the defendant shall challenge him peremptorily or accept him. *Lackey* v. *State,* 67 Ark. 416. Each party must challenge or accept in the order named, when the court declares him competent. After he is accepted by both parties, he cannot be challenged peremptorily without permission. The court, for good cause, may permit the challenge to be made at any time before the jury is completed. Sand. & H. Dig., §§ 2202-2217.

In the case before us the record fails to show any reason given for challenging Adams after he had been selected, and consequently fails to show that the court erred in refusing to allow him to be challenged.

The last ground upon which appellant, in his brief, insists that the judgment of the trial court should be reversed is the admission of the testimony of Johnson Thompson, given at a former trial, without proof that he was absent, dead, or had ever been subpœnaed. But, as it was not made a ground of a motion for a new trial, the appellant cannot take any advantage of it on an appeal, and we cannot reverse on account of it.

Judgment affirmed.