## BREWER v. STATE.

### Opinion delivered January 16, 1904.

1. CHANGE OF VENUE—FILING OF TRANSCRIPT.—Where the record in a criminal case shows that on August 25, 1903, a change of venue was ordered, and the certificate of the clerk of the court from which the change was taken shows that the transcript of the record of such court was made out and certified on August 28, and the record of the trial court shows that the trial took place on September 4, 1903, and that defendant went to trial without objecting that the transcript was not filed in time, it will be presumed on appeal that the transcript was filed in apt time, although it lacks the clerk's file mark. (Page 149.)

2. ARRAIGNMENT AND PLEA—NECESSITY OF.—A conviction of a felony will not be reversed for want of a formal arraignment and plea, in the absence of any suggestion of prejudice. (Page 151.)

3. JUROR—CHALLENGE.—Error in overruling a challenge of a juror for cause is not prejudicial where the court afterwards allowed defendant an additional peremptory challenge. (Page 151.)

4. SAME.—It was not error, in a capital case, to permit the prosecuting attorney to challenge a juror peremptorily after he had been accepted but before the jury was complete, where the juror informed the court that he had conscientious scruples against capital punishment. (Page 152.)

5. CONFESSION—WHEN VOLUNTARY.—Where defendant had made a confession to the effect that on the day of the killing two armed men wearing masks compelled him to pilot them to where deceased lived and then told him to leave, threatening to kill him, and officers who

arrested defendant told him that it would help him if he would give the names of these men, a second confession, made by defendant under a promise that the officers would protect him, that he himself killed deceased under orders of these masked men, was voluntary and admissible. (Page 152.)

6. HOMICIDE—JUSTIFICATION—UNLAWFUL COMPULSION.—An instruction that if defendant shot deceased under compulsion by third parties to save his own life, the jury should acquit, was properly refused, as unlawful compulsion is not a sufficient justification for taking the life of an innocent person. (Page 153.)

7. SAME—INSTRUCTION NEED NOT BE REPEATED.—Where the court instructed the jury that a killing must have been done with malice aforethought and premeditation to constitute murder in the first degree, it was unnecessary to repeat such statement in each paragraph of the charge. (Page 154.)

Appeal from Greene Circuit Court.

ALLEN N. HUGHES, Judge.

Affirmed.

### STATEMENT BY THE COURT.

The defendant, H. N. Brewer, was indicted by the grand jury of the Eastern District of Clay county, for the murder of Bud Dortch. Dortch was a bachelor, who lived in a cabin on a small farm in that county. On the night of the 19th of last August, J. L. Dortch, a cousin, went over to spend the night with him. Dortch was not at home when he arrived, but, expecting that he would be there some time during the night, the cousin remained there the entire night. As Dortch was still absent, the cousin, knowing that he seldom left home for a whole night without notifying some of the family, became alarmed, and notified others of the family and the neighbors. Search was made, and his body was found about 150 yards from the house, lying face upwards, with several shot wounds in the face and head. Gun wads that were found near the body and the number of wounds indicated plainly that Dortch had been killed by a charge from a shotgun fired by some one lying in wait behind a fence near a pathway along which Dortch was walking at the time he was killed. Tracks were discovered where the assassin had crouched waiting for his victim. These tracks led from the place where the shot had been fired to the body, and then returned, and led off into the

woods, where the nature of the ground prevented them from being traced. It was known to members of his family and to some others that Dortch was in the habit of keeping in a pocketbook which he carried in his pocket about $50. He kept the pocketbook fastened by a string tied around it. Neither the pocketbook nor money was on his person, but a string like the one he usually tied it with was found near. One of his pockets was partly pulled outward, as if something had been taken from it. There was no clue to identify the one who killed him except the tracks, and a proposition was made by someone to send for bloodhounds to follow them. Parties went to Rector, the nearest town, to telephone to parties to bring bloodhounds. The hounds were not obtained, but the rumor that they would be placed on the trail to run down the murderer led to a confession by the defendant and to his subsequent arrest and conviction. The defendant was a young married man, who lived some three or four miles away from where Bud Dortch was killed, and was one of those who knew that Dortch was in the habit of carrying money on his person. He had previously borne a good character, and no one suspected him of the crime. But a short time after the body of Dortch was found one Williams, an acquaintance of the defendant Brewer, and who lived with the father-in-law of Brewer, went to the home of Brewer, and told him about the discovery of the body of Bud Dortch, and stated that they were going to put bloodhounds on the trail of the party that killed him. Williams was with Brewer several hours, going with him over to a mill, and they talked a great deal about the death of Dortch. During this conversation Brewer told him that he would tell him something, but he must keep it a secret. He then said that on the day Dortch was killed two men armed with double barrel hammerless shotguns came up to him while he was walking around his field, and compelled him to show them the way to where Bud Dortch lived; that he obeyed, and led them through the woods to where Dortch lived, but that they failed to find Dortch. These men told him, he said, that there would be three men killed there in three days, and then ordered him to leave, telling him if he ever mentioned it he would be killed. He told Williams he was afraid for this to be told, as these men might kill him for it.

When it became known that Brewer had made such a state-
ment, an order was made for his arrest. The arrest was made by
the coroner and the town marshal of Rector. After the arrest
was made, these officers asked him about the parties that forced
him to go to the home of Dortch. At first he denied knowing
anything about them, or about such a circumstance; but, on the
question being repeated, he stated that it was true. He repeated
in substance to them the confession he had previously made to
Williams, in addition thereto saying that as the men who had him
in custody went along through the woods they frequently stopped
to rub something on the bottom of their shoes. After he had
repeated this confession they told him that he ought to tell who
those parties were, and that if he would do so "it would help him
out." After they had asked him several questions about the mat-
ter, he told them that he had something to tell them, and would
do so if they would stay with him. They told him that they would
do so, and he thereupon confessed that he shot Dortch, but stated
that he was compelled to do so by parties who had him in custody.

To quote the language of one of these witnesses, he said that
"two masked men armed with hammerless guns caught him back
of his field, and made him go with them over there to show them
the way, and they made him go through the woods, and when they
got over there one of them said, 'Yonder he comes now,' and they
gave him a gun, and made him shoot Bud Dortch." He further
stated in the confession that at the time he fired he was behind
the fence kneeling on one knee and foot, and that he aimed at the
head, but did not see Dortch after he fell; that the men ordered
him to leave at once, threatening to kill him if he ever told it.

There was some other evidence showing that the defendant
was out with a shotgun on the day Dortch was killed, and that
on his return he had no game, but stated that he had shot at a
very large horned owl, but did not kill it. This is, in short, the
material part of the evidence upon which the defendant was
indicted, tried and convicted of murder of the first degree. The
case was tried in Greene county on a change of venue. The
defendant appealed, and the other facts are stated in the opinion.

*J. H. Hill, L. Hunter* and *J. D. Block,* for appellant.

The court erred in not excusing for cause the jurors Troxell,
Faulkner and Landrum. 69 Ark. 326. It was also error to allow

the state to peremptorily challenge the juror Cathey after he had once been accepted. Sand. & H. Dig. § § 2210-13 ; 63 Ark. 527. The court erred in giving the seventh and fifteenth instructions. Sand. & H. Dig., § 1448; 59 Ark. 392; 15 N. W. 98; 66 Ark. 506. Also in giving the eighth. 50 Ark. 305. It was error to admit the evidence as to the confession. 50 Ark. 305; 22 Ark. 336; 110 U. S. 574; 135 Mass. 269. There was no jurisdiction in the Greene circuit court, the crime having been committed in Clay county, and no record having been lodged in the Greene circuit court. 48 Ark. 94. The want of arraignment and plea avoids, the judgment. 34 Ark. 273; 39 Ark. 108.

*George W. Murphy, Attorney General,* for appellee.

The confession was properly admitted. 25 Ark. 531; 50 Ark. 501.

RIDDICK, J. (after stating the facts). This is an appeal from a judgment convicting the defendant of murder in the first degree and sentencing him to be hung. The crime was committed in Clay county, but the trial was had in Greene county on a change of venue. The first point made for a reversal of the judgment is based on the contention that the Greene circuit court had no jurisdiction, for the reason that the transcript of the record of the Clay circuit court for the Eastern District was never filed in the Greene circuit court. But the transcript of the record on file here from the Greene circuit court is complete, and shows a complete record of the proceedings in the case both in the Clay and Greene circuit courts. The certificate of the clerk of the Greene circuit court attached to this record shows that the transcript of the Clay circuit court, which he has copied in the record, is on file in his office. It is true that there is no file mark copied in the record showing the exact date upon which the transcript from the Clay circuit court was filed. But while the indorsement of the clerk upon a transcript that it has been filed is evidence of that fact, yet the transcript may have been filed, and no indorsement made, or the indorsement may have been made, and not copied in the record sent to this court. Whenever the transcript is duly deposited with the clerk in his office to be kept on file, it has been filed within the meaning of the law. 8 Enc. Plead. & Prac. 923. Now, the clerk should, we admit, have made this indorsement as a matter of evidence, and should have copied it into the transcript.

But it does not follow because he did not do so that the transcript was not filed; on the contrary, we think the whole record, taken together, indicates that it was filed in due time. The record here shows that the order for a change of venue was made by the Clay circuit court on the 25th day of August, 1903, and the order among other matters directs that the clerk of that court "forthwith make out a full and complete transcript of all records," etc., "and immediately transmit the same, duly certified under seal of the court, to the clerk of the Greene circuit court." The certificate of the clerk of the Clay circuit court, copied in the record here, shows that this transcript was made and certified on the 28th day of August, 1903. The record of the trial in the Greene circuit court shows that the case had been placed on the docket of that court for trial, and was numbered 189, and that the trial took place on September 4, 1903. The defendant was present in person, as well as represented by able counsel. Both parties announced ready for trial. The charge was stubbornly contested, and after the conviction a motion for new trial was filed, in which many grounds were alleged why the judgment should be set aside. But neither before nor after the trial was any objection made on account of the transcript not being filed in time. The first time such an objection was made was in the brief of counsel for appellant filed in this court. Now, the jurisdiction of the Greene circuit court depended mainly upon the order made by the Clay circuit court for the Eastern District ordering the venue changed to Greene county. It is beyond doubt that such order was made, and made in due form, on the application of the defendant. The jurisdiction was perfected by the filing of the transcript of the record in the Greene circuit court, though, as before stated, the exact date of the filing does not appear. But we think it is unreasonable to believe that this case would have been placed on the docket of the Greene circuit court for trial, or that both parties would have consented to trial, or that the court would have permitted a trial, had no transcript of the indictment and order for change of venue been in that court.

When we consider the whole record, and the fact that no objection was made below, we feel convinced that the officers did their duty in this respect, and that the transcript was filed in due time. In the case of *Burris* v. *State,* 38 Ark. 221, the court

calls attention to a defect of this kind, but it will be noticed that the judgment was not reversed on that account. For the reasons stated, the contention of appellant on this point must be overruled.

The second contention is that the judgment should be reversed because the defendant was put on his trial without a formal arraignment and plea of not guilty. There are several decisions that support that contention in the earlier reports of this court, but those cases have been overturned by later decisions. The court said in a recent case that the record "shows that the appellant was represented by competent counsel, that he voluntarily announced himself ready for trial, and that the case was treated as at issue upon a plea of not guilty. The defendant was accorded every right that he could have availed himself of under the most formal record entry of his plea." The court thereupon held that there was no prejudice. This decision was, we think, clearly correct, and applies here. No prejudice having resulted from the failure to make a formal arraignment and plea, there is, under our statute, no ground for reversing the judgment on account of the lack of such formalities. *Hayden* v. *State,* 55 Ark. 342, 18 S. W. 239.

The next assignment of error relates to the qualification of certain talesmen summoned to serve on the jury. Several of them said that they had formed opinions from reading the account of the crime in a newspaper, but that they could and would disregard these opinions, and try the case on the evidence alone. We find nothing in the record here that would justify us in overturning the finding of the presiding judge that these men were competent to serve on the jury. It is true that the answers of one of them, S. J. Troxell, are not quite clear to us. In his answer to one of the questions propounded he stated that the opinion he had formed would have no effect on his verdict, but in other answers to other questions he seems to say that if the evidence was conflicting and close, he would give some weight to the rumors that he had heard. We do not think that he meant this, but the examination was closed without giving him a chance to fully explain himself. But we need not discuss the question further for the reason that none of these talesmen served on the jury, and the only effect of holding either of them competent was to cause the defendant to use one of the peremptory challenges,

which the statute permits. But the record shows that before the jury was complete the presiding judge offered to allow the defendant one more peremptory challenge than the statute allows in order, as he said, "to cure any possible error in passing on qualifications of jurors." This offer was made after the defendant had exhausted all his peremptory challenges, and was accepted by the defendant, who thereupon challenged another juror. So far as the record shows, this action of the court placed the defendant in the same position he would have been had talesman Troxell been excused for cause, and cured any possible error made by the court in holding that he was competent. It was just the same as if the court had said: "I have changed my opinion, and now hold that the challenge for cause made by the defendant should be sustained, and will for that reason allow an extra challenge."

Before the jury was complete, the court permitted the prosecuting attorney to peremptorily challenge J. P. Cathey after he had been examined and taken on the jury, but the reason for this was that the juror had informed the court that he had conscientious scruples against capital punishment. The action of the court was therefore not an arbitrary act, but based on reasons which justified it, and no error was committed. *Allen* v. *State, 70 Ark.* 337, 68 S. W. 28.

It is next insisted that the court erred in admitting the confession of the defendant made to the officers who arrested him. In the case of *Hardin* v. *State, 66 Ark.* 61, 48 S. W. 904, we said: "When a prisoner is merely exhorted to tell the truth, or when he is only admonished that he had better tell the truth, and no hope is held out that the punishment will in consequence be mitigated, any confession thereupon made will be admissible." Now, it must be remembered that at the time the defendant was arrested he had already made one confession to the effect that on the day that Dortch was killed two armed men wearing masks on their faces had compelled him to pilot them through the woods to where Dortch lived, and then had told him to leave, threatening to kill him if he ever told about it. This strange story led to his arrest, and when he was arrested the officers very naturally asked him who those men were. At first, he hesitated to speak about the matter, but, on the question being repeated, he said that it was true that two men had forced him to take them to Dortch's place

on the day he was killed. The officers then very truthfully told him that it would help him out if he would give the names of these men. He thereupon told them that if they would protect him he would tell them something, and on their telling him that they would do so he confessed that he shot Dortch, but said that he did it under orders from two masked men that had him in custody. The officers did not ask him who killed Dortch, but only who the men were that went with him over to where Dortch lived. He then told them that he would tell them something "if they would stay with him," and they promised to do so. This, as the evidence shows, was not a promise that the punishment would be mitigated, but a promise that they would protect him against a mob or violence of that kind. The evidence was, we think, amply sufficient to support the finding that the confession was voluntary.

The only remaining questions relate to the instructions given by the court to the jury. The court refused to instruct the jury that, if the defendant shot Dortch under compulsion by third parties to save his own life, they should acquit, but, on the contrary, told them that, though one may lawfully kill an assailant, if it be necessary to save his own life, he cannot lawfully slay an innocent third person, even to save his own life, but ought to die himself rather than take the life of an innocent person. The question presented by the exception to this ruling has been discussed by text writers more often than by the courts. But we feel very certain that unlawful compulsion of the kind set up as a defense in this case is not a sufficient justification for taking the life of an innocent person. Sand. & H. Dig. § 1448; *Arp* v. *State,* 97 Ala. 5; 19 L. R. A. 359; 38 Am. St. Rep. 137; *Reg.* v. *Tyler,* 8 Car. & P. 616; *Reg.* v. *Dudley,* 14 Q. B. Div. 273; 4 Blackstone, p. 30.

Whether, under some circumstances, compulsion of that kind might go to reduce the grade of the offense and in mitigation of the punishment, we need not stop to inquire, for, if we should concede that this was so, the evidence here does not establish any such compulsion. The only evidence to prove compulsion was a confession made by defendant. While all parts of the confession must be considered, yet the jury were not required to believe such portions of it as seemed to them unreasonable and improbable. And, though they found that Brewer killed Dortch, they no

doubt rejected the improbable story that he did so under compulsion by armed men, who walked through the woods with masks on their faces, stopping occasionally to rub on the bottom of their shoes a red looking liquid which they kept in a bottle. This part of the confession was certainly uncorroborated, and was first concocted and told by Brewer to one of his friends under the belief that blood hounds were about to be put on the trail. It was, no doubt, an effort on his part to put forth some plausible excuse that might shield him in the event he was run down and arrested.

But if we take this confession as literally true, it does not show that defendant had no other option except to lose his own life or take that of Dortch. He said that two men armed with a shotgun and pistol captured him and compelled him to pilot them to the Dortch place, and then gave him one of the shotguns, and ordered him to kill Dortch, but he does not show why, after getting possession of the gun, he did not turn upon them and defend himself. The tracks where defendant lay in wait showed that only one man was there, and the circumstances indicated that, besides Dortch, there was present at the time he was killed only the man who fired the shot. A compulsion that could reduce or mitigate such a crime must have been more than a fear of future harm; it should appear that the danger of resisting such a force was immediate and impending. The confession does not locate the position of the masked men at the time the shot was fired, or show that there was no alternative for the defendant except to kill Dortch or lose his own life. For this reason, we think that the presiding judge was fully justified in telling the jury that under these circumstances compulsion was no justification or excuse for the crime charged.

It is said that in this instruction the jury were not told that to make out the offense of murder in the first degree the killing must have been done with malice aforethought and premeditation, but that is of no moment, for the jury were in other instructions told that these elements were necessary to justify a conviction for that crime, and it was unnecessary to repeat it in each separate paragraph of the charge.

Besides the overwhelming and uncontroverted proof showed that Dortch was assassinated by some one who lay in ambush for him near a pathway along which he was accustomed to go to

and from his field. The question in the trial below then was not so much whether the killing was done with malice aforethought, premeditation and deliberation, for there was no room for dispute about that, but whether the defendant was the person who committed the deed.

On the whole case, we find no prejudicial error, and are convinced that the judgment was right. It is therefore affirmed.