LAND, J.
Defendant was indicted for murder, found guilty of manslaughter, and was sentenced to imprisonment at hard labor for a term of 18 years.
Defendant relies on his appeal for the reversal of the verdict and sentence on a number of bills of exception, which we will consider in their numerical order.
Bill No. 1.
The district attorney, having offered evidence tending to show that the death of the deceased resulted from a wound inflicted with a 44 or 45 caliber pistol bullet, placed upon the stand the deputy sheriff, who arrested the accused six months after the homicide, for the purpose of proving that on the occasion of such arrest the officer took from the person of the accused a 44 or 45 caliber pistol, which the district attorney presented in open court on the trial of the cause. On abjection made by counsel for the accused the jury retired, and the testimony of the witness was reduced to writing. The jury was recalled, and the witness took the stand, whereupon counsel for the accused objected to his testimony on the ground that there was no evidence to show that the pistol in question was used at the time of the alleged homicide, or to identify the said weapon with the homicide, and that said testimony was calculated to prejudice the minds of the jury by inducing them to believe -that said pistol was used by the defendant, when it was only taken off his person six months after the homicide, as shown by the testimony of the witness.
The objections were overruled, and the witness testified before the jury as follows:
“I arrested the accused about six months after the homicide, and I found a pistol on him. It was a blue steel Colt’s, 44 or 45 caliber. Witness is shown a pistol by the district attorney, and identified the pistol as the one found on the accused at the time he was arrested.”
In his testimony, taken out of the presence of the jury, the witness said in part as follows:
*535 “When I arrested him I found on him the pistol presented here in court, a 44 Colt’s, I believe.”
Counsel for the accused in this court takes the rather singular position that the witness did not before the jury identify the pistol produced in court as the one found on the accused at the time of the arrest; the statement to that effect being not the testimony of the witness, but only the inference or conclusion drawn therefrom by the clerk. In his bill the counsel, after reciting the testimony of the witness, states that it shows that the pistol in question was taken off the person of • the accused. It is evident that the clerk, instead of writing down the colloquy between the district attorney and the witness as to the identity of' the pistol, stated the ultimate facts by the recital that the witness “identifies the pistol as the one found on the accused at the time he was arrested.” This statement was not objected to at the time, but was accepted as showing the substance of the testimony of the witness as to the identification of the weapon. On the other hand, if the statement of the clerk is inadmissible to supply evidence not taken down, the statement of the trial judge is, and his per curiam shows that “this revolver was produced and identified.” This was an undisputed fact, and the objection was that no evidence had been offered to identify the weapon as the one used by the defendant at the time of the homicide.
We think that the testimony was admissible, and that the objection went to the effect of the evidence. While the probative force of the similarity of weapons was very slight, yet such similarity was a link in the chain of circumstantial evidence, and the trial judge was not in a position at that stage of the proceeding to determine the pertinency of the testimony, and could not control the order in which the district attorney chose to introduce the evidence for the state.
The proper rule in such cases was laid down in State v. McFarlain, 42 La. Ann. 803, 8 South. 600. .
Bill No. 2.
This bill was reserved to the refusal of the judge to have the cross-examination of the same witness before the jury reduced to-writing. There was no objection to • this-cross-examination by the state, and the defendant does not complain of the evidence,, but only that it was not written down.
We infer from the bill that the defendant had the benefit of the evidence elicited on such cross-examination. The testimony of this witness was taken in writing out of the-presence of the jury at the request of defendant’s counsel on the question of its admissibility. The witness was examined and, cross-examined, and when he took the stand before the jury the defendant’s counsel objected, as already stated, and so much of the testimony as was thus objected to was. reduced to writing and annexed to bill No. 1, together with the full testimony of the witness as taken before the judge. It is not suggested 'that the evidence adduced on cross-examination of the same witness before the jury differed in any respect from his-testimony before the judge. Hence there-is no showing of prejudicial error, even if' the ruling complained of was wrong. But we cannot recognize the asserted legal right, of defendant to compel the reduction of testimony to writing, unless shown to be-necessary to furnish a basis for a bill of exceptions. It is obvious that the judge had already ruled on the objections to the admissibility of the testimony, which had been, reduced to writing as required by Act No.. 113, p. 162, of 1896, and that the subsequent' cross-examination of the same witness before the jury did not raise any new question of law for the court to determine. IJencethe bill is without merit.
*536 Bill No. 3.
Objection was made to testimony showing statements or admissions of the accused relative to the homicide, on the ground that the corpus delicti had not been proven. The judge states that the corpus delicti had been fully established by other evidence, and this disposes of the objection.
Bill No. 4.
This exception was taken to the refusal of the court to grant defendant a new trial. The grounds of the motion, for a new trial are numerous. The first, that the verdict is contrary to the law and the evidence, presents no question of law for our determination. The second, third, and fourth have already been considered in disposing of the ■bills of exception taken on the trial. The fifth is to the effect that on the trial a witness for the state, a white man of influence, volunteered the statement, before the counsel for accused could object, that the accused was a man of bad reputation. The trial judge states in his reasons that no objection was made on the trial, and no bill of exception was reserved, and no ground for a bill furnished. He further says:
“No witness was permitted to testify as to the character of the accused. A witness did make some attempt to do so, and was promptly prevented from doing so, and the jury was immediately instructed to disregard anything said or intimated relative to the character of the accused.”
Defendant’s objections, made for the first time in his motion for a new trial, came too late. His counsel in his brief admits that, “technically considered, the complaint is without merit,” but argues that the incident recited shows injury to the accused. Suffice it to say that our appellate power over the verdict is confined to question of law properly raised at the proper time.
The sixth ground is as follows, to wit:
“Because, when the jury was filing out of the court room at the noon hour for dinner, some one standing near where the jury had to pass spoke to one of the jurors, and said something to him in the French language, all of which will appear from the affidavit of David B. Lozano, hereto attached and made a part hereof.”
Mr. Lozano in his affidavit stated that he was an assistant in the clerk’s office, and did not understand the French language, and deposed that on July 13, 1905, he was present at the noon hour when the jury left the courtroom for dinner; that he was within 15 or 20 feet of the jury when they passed out; that some one, a man unknown to affiant, addressed one of the jurors in the French language; and that the juror addressed smiled and spoke to said unknown party in the same tongue.
The sheriff of the parish deposed as follows:
“The jury in this case was constantly in my charge when out of the presence of the court, and in going to their meals at dinner I watched them constantly, and particularly warned them against speaking to anybody or allowing them to be spoken to, and I did not see anybody speak to them, though watching for it, except that when we passed Hearn’s Pharmacy Dr. Grace was standing in the door, and made some jocular remark to the jury as they passed, no one in particular. None of the jury spoke to him, but went on. I did not hear what the remark was. I am certain that, had any one spoken to the jury as stated in David Lozano’s affidavit, I would have seen it.”
The trial judge in his reasons says:
“The affidavit of Sheriff A. A. Brown, a gentleman of the highest character and integrity, disposes of this ground.”
The question was one of fact on which there was a conflict of testimony, and was decided by the trial judge, who knew the deponents, adversely to the defendant.
Counsel for defendant argues that the affidavit of the sheriff is negative, and therefore does not contradict the affidavit of Lozano, which is positive. As a general rule positive testimony is entitled to more weight than negative testimony, because he who testifies to a negative may have forgotten, while it is not possible to remember a thing that never existed. Bice on Evidence, vol. 3, § 666.
*537 The same writer, however, says:
“Negative testimony may sometimes, however, equal positive in weight, and even exceed it; as, for instance, where there is an inherent improbability in the positive testimony. The weight of the negative testimony depends upon the observation, whether exhaustive or slight. If the attencion of the negative witness is concentrated on a particular point, his testimony may outweigh a witness who swears affirmatively, but whose attention has not been so concentrated.”
The question is as to the weight of the evidence, and we cannot say, as a matter of law, that the judge erred.
Judgment affirmed.