## Drake v. Commonwealth.

(Decided April 23, 1926.)

### Appeal from Muhlenberg Circuit Court.

1. Indictment and Information—Indictment Charging Defendants with Aiding and Abetting Each Other in Shooting Held Not Demurrable for Failure to Allege Jury's Lack of Knowledge as to Who was Principal and Who was Aider or Abettor.—Indictment in murder prosecution, charging each defendant with aiding and abetting the other in the shooting, held not demurrable because not showing that grand jury was ignorant as to who was principal and who was aider or abettor, since both were parties in first degree and might be so accused and convicted.

2. Criminal Law—Statute does Not Deprive Commonwealth of Right to Try Separately Defendants Jointly Indicted for Murder (Criminal Code of Practice, Section 237).—Criminal Code of Practice, section 237, providing that if two or more defendants be jointly indicted for felony any defendant is entitled to a separate trial, does not deprive Commonwealth of right to try defendants jointly indicted for murder at separate trials.

3. Homicile.—In murder prosecution, question of defendant's guilt held for jury.

4. Criminal Law—Testimony of Witness as to How Far Pistol would Burn Clothing Held Properly Admitted, where he had Qualified.— Testimony of witness as to how far a pistol would produce a powder burn on clothing or set clothing on fire held properly admitted, where he had qualified.

5. Criminal Law—Letter Written by Defendant to Codefendant Advising Her as to What Testimony She should Give, Held Admissible, where it was Properly Identified.—In murder prosecution, letter from defendant to codefendant, advising her as to what testimony she should give, held admissible, where it was properly identified.

6. Criminal Law.—Jury are sole judges of weight to be given evidence of witnesses.

7. Criminal Law.—Jury are triers of the facts.

T. O. JONES for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE GOODPASTER—Affirming.

At the September term, 1924, of the Muhlenberg circuit court the following indictment was returned, to-wit:

"The grand jury of the county of Muhlenberg, in the name and by the authority of the Common-

wealth of Kentucky, accuse Sam Drake and Lena Wing of the crime of willful murder committed as follows, to-wit: The said Drake and Wing heretofore, within one year before finding of this indictment, to-wit: on the — day of —, A. D. 192—, in the county aforesaid, did unlawfully, willfully, feloniously, and of their malice aforethought, murder, kill and slay one Morton Wing by shooting and wounding him, the said Wing, upon his head, limbs, body and person with a pistol or gun loaded with powder and ball or balls of lead or other hard substance, a deadly weapon, with the intention to kill the said Morton Wing and from the effects of which said shooting and wounding he did die within a year and a day thereafter; and each did then and there counsel, advise, aid, abet, encourage and assist the other in the shooting, wounding and slaying of the said Morton Wing as aforesaid, done as aforesaid and against the peace and dignity of the Commonwealth of Kentucky.''

At the April term of said court, 1925, the Commonwealth moved the court for a separate trial of the defendants, which motion the court sustained, to which the defendants excepted. Thereupon the Commonwealth elected to try the defendant, Sam Drake. The defendant demurred to the indictment and the court being advised overruled the demurrer. Thereupon both sides announced ready for trial and the trial proceeded and resulted in a verdict finding the defendant, Sam Drake, guilty of the crime of voluntary manslaughter and fixed his punishment at confinement in the penitentiary for a period of twenty years.

At the same term of court the defendant filed his motion and grounds for a new trial, which are as follows:

"The defendant, Sam Drake, moved the court to set aside the verdict of the jury and grant him a new trial herein, for the following reasons:

"First: Because the court erred to the prejudice of the defendant in admitting incompetent evidence offered by the plaintiff, and in rejecting competent evidence offered by the defendant.

"Second: Because the court erred to the prejudice of defendant in refusing to peremptorily instruct the jury to find the defendant 'not guilty' at

the conclusion of the evidence on behalf of the Commonwealth.

"Third: Because the court erred in refusing to peremptorily instruct the jury to find the defendant 'not guilty' at the conclusion of all the evidence.

"Fourth: Because the court erred in giving to the jury instructions Nos. one to eleven, inclusive, and each of them.

"Fifth: Because the court erred in failing to give to the jury the proper instructions on the law of the case, and in failing to instruct the jury on the whole law of the case.

"Sixth: Because the court erred in advising the jury after the case had been submitted to them and they had retired to their room to consult, by designating and interpreting specifically certain instructions given, without mentioning that the instructions should be considered by the jury as a whole.

"Seventh: Because the verdict of the jury is contrary to both the evidence and law of the case, and is not supported either by evidence or law.

"And upon this motion defendant prays the judgment of the court."

At said April term the court overruled the motion and grounds for a new trial, to which the defendant objected and excepted and prayed an appeal to this court, which was granted. At the same term of court the following judgment was rendered, to-wit:

"The defendant was this day brought into open court and, being informed of the nature of the indictment, plea and verdict of the jury, was asked if he had any legal cause to show why judgment should not be pronounced against him, and none being shown, it is ordered and adjuged by the court that the defendant, Sam Drake, be conveyed by the sheriff of Muhlenberg county to the state penitentiary at Eddyville, Kentucky, and there confined at hard labor for a period of twenty years, and prayed an appeal to the Court of Appeals of Kentucky, which is granted. On motion of defendant the execution of the above judgment is hereby suspended until the expiration of the period within which the defendant is required to lodge a transcript of the record in the clerk's office of the Court of Appeals, or a copy of

the order of the Court of Appeals is filed with the clerk of this court, granting further time to lodge the transcript, or until the clerk of the Court of Appeals issue a certificate that an appeal has been taken, and the defendant is remanded to the custody of the jailer."

Defendant's counsel insists that the indictment is not good on demurrer because, as alleged by him, it charges each defendant with aiding and abetting the other in the shooting and does not show this fact was unknown to the grand jury, and alleges that for that reason the demurrer should have been sustained. In the case of Reed v. Commonwealth, 125 Ky. 131, this court, speaking through Judge Settle, said:

"No better statement of the law on the subject here presented can be announced than is found in Roberson's Kentucky Criminal Law, vol. 1, section 78, wherein it is said: 'The distinction between principals in the first and second degree is of no practical importance. All the offenders may be included in the same indictment, which may charge the offense as done generally by all, or specially as done by one and abetted by the rest. Thus, if two or more persons are indicted as the actual perpetrators of a crime, they may be convicted as principals in the first degree, although some of them were merely aiders and abettors. So, when two persons are jointly indicted, the one as principal and the other as aider and abettor, the one charged as principal may be found guilty of aiding and abetting, and the one charged as aider and abettor may be found guilty as principal. This is for the reason that each is the agent and instrument of the other. There is in law but one crime. Hence each, although performing different parts, is, in law, a principal, and is criminally responsible for the act of the other, as well as his own act."

In the case of Grapes v. Commonwealth, 202 Ky. 761, this court, speaking through Judge Clarke, said:

"It is the law in this Commonwealth that the principal actor, aiders and abettors, and accessories before the fact, are all parties in the first degree and are equally guilty and may be so accused and convicted."

It is clear that the court's action in overruling the demurrer was proper.

The second ground is as follows: Error in granting separate trial of the defendants. In support of his contention that the court erred in granting a separate trial on the motion of the Commonwealth, he cites section 237 of the Criminal Code, which provides, in substance, that any defendant jointly indicted may be granted a separate trial. In the case of Hoffman v. Commonwealth, 134 Ky. 733, this court, speaking through Judge Settle, said:

"Section 237, Criminal Code of Practice, provides: 'If two or more defendants be jointly indicted for a felony, any defendant is entitled to a separate trial.'

"The language of this section is mandatory as to the right of a defendant, jointly indicted with another or others for a felony, to a separate trial. The court is without power to refuse it to him when demanded. The section is, however, silent as to the right of the Commonwealth to separately try one of several defendants jointly indicted for a felony. But in the absence of any statute denying the Commonwealth the right to try separately one of several defendants so indicted, there is, in our opinion, no obstacle in the way of its exercise of such right. It must not be overlooked that at the common law the Commonwealth and not the defendant, in case of joint indictments, had the right of election, subject to the discretion of the court whether to try defendants jointly or separately. The Code only changes the common law to the extent of also allowing a defendant in cases of joint indictment for a felony, the right to demand and have a separate trial, but does not take away from the Commonwealth the right to separately try each of several defendants, jointly indicted for a felony. In other words, the common law, in respect to this right of the Commonwealth, has not been abrogated by the Code.

"It will further be observed that, although section 237, Criminal Code of Practice, gives to the defendant, jointly indicted with another or others, the right of separate trial, it does not confer upon him the right of a joint trial, nor does such right exist

at the common law. It follows, therefore, that a severance may be ordered at the instance of the Commonwealth as of the defendant; and where justice so requires, the court may order separate trials of its own motion, without application therefor by either party."

At the conclusion of the Commonwealth's direct evidence the defendant entered a motion for peremptory instruction, which the court overruled. The defendant excepted and at the conclusion of all the evidence the defendant renewed the said motion, which was overruled, and he excepted.

The evidence discloses that the defendant, Lena Wing jointly indicted with defendant, Sam Drake, and her husband, Morton Wing, had been separated for about six weeks before the homicide, she during that time living with her father at Matlick, a few miles from Greenville. That on the day of the homicide she went to Greenville, first going to the house of her sister, remaining there but a short time, and then went to the home of Harve Hurt and Mary Hurt and remained there until after the supper hour. Later in the evening her husband, whose home was about forty to fifty feet from the Hurt home, came to the Hurt home and took the baby over to his home. Not a great while thereafter he returned to the Hurt home and asked his wife for some article of wearing apparel for the baby, which she refused to let him have, and he then left and went to his own home. A short time thereafter Lena Wing went to the home of her husband and while there Morton Wing was shot and killed.

She was introduced as a witness by the Commonwealth and substantially testified as follows: While at Harve Hurt's house she said she wanted her baby and defendant, Sam Drake, said, "If you want your baby why don't you go get it?" that she went to Morton Wing's house and picked up the baby in her arms and started away with it when he, Morton Wing, her husband, arose and took hold of her with one hand and holding a razor up in the other hand; that Mary Hurt was near the door in the adjoining room and said to him, "Mort, I wouldn't do that if I were in your place." She then said that defendant, Sam Drake, said, "Morton, there is no need of that," and Morton said, "What have you got to do with it?" and a pistol fired and Morton

Wing fell in the floor; that she then went over to Mary Hurt's; that as she left the house Sam Drake and Mary Hurt also walked out into the yard.

Granville McDonald, the deputy sheriff of Muhlenberg county, was introduced by the Commonwealth and testified: "I went to the home of Morton Wing between 7 and 8 p. m. on the day of the homicide and found Morton Wing dead on the floor with a pistol shot in the neck about the collar bone;" that he didn't think there was any powder burn on him or on his clothes; that no one was in the house when he arrived; Morton Wing was lying on the floor on his back with his hands across his stomach; that he went from there to Harve Hurt's house a short distance away and found a pistol, Smith and Wesson hammerless, 38 caliber, with an empty place in the cylinder, one empty shell and three loads. The pistol bore evidence of having been recently fired. While in the home of Morton Wing he saw a razor just behind Morton's head just half way open with the blade and handle lying over his head behind him; that he arrested Lena Wing at Harve Hurt's house; on a sewing machine or table he found a pistol; he asked Lena Wing if that was the one she used and she said, "Yes, but I didn't shoot it. That is the gun I used but I didn't shoot it," and he arrested her.

Mary Hurt, who was introduced as a witness by defendant, testified that she heard Lena Wing scream and went into Morton Wing's house, and he had Lena all hugged up with a razor open like he was going to cut her head off; that she ran out—saw no one in there; that she turned her head to run out when she saw the razor and the pistol fired and both of them fell. "There was no other person present that I saw. If there had been any other person present I would have known it." That the shot was not fired from the kitchen; if it had been she would have seen it; it was fired from the other room.

Granville McDonald was recalled for the Commonwealth and was asked: "Did you ever shoot this pistol which is said to have been found there for the purpose of ascertaining how far it would produce powder burn on clothing, or set clothing on fire?" Defendant objected to the question, which the court overruled, and he excepted. Answer: I did.

"Q. How far would it produce powder burn on clothing or set clothing on fire? Defendant objected.

which was overruled and he excepted. The ruling of the court in each instance is approved.

"A. Well, when I tried it, it would make powder stains at about seven feet and set them afire a foot to eighteen inches.

Marvin Martin was introduced for the Commonwealth and testified that the next day after the killing the defendant, Sam Drake, said in his presence that if Lena would tell this thing like he told her to tell it she would come out all right.

Bobby Martin was introduced by the Commonwealth and testified that he heard the defendant make a similar statement.

Henry Brown was introduced as a witness for the Commonwealth and testified he remembered when Sam Drake was in jail on the charge of killing Morton Wing; that he was about the jail and that Sam Drake gave him a letter addressed to Mary Hurt that was in an envelope sealed up. He was asked this question:

"Q. Is that the envelope that he gave you? A. I think it is. Yes, sir.

"Q. Was there something inside of it when he gave it to you? A. Yes, sir.

"Q. Did you open it? A. No, sir.

"Q. What did you do with it? A. Put it in my overalls' pocket and lost it.

"Q. When you lost it where were you employed, what part of town were you in? A. Working up and down this street.

"Q. Did you go in and out of the courthouse here that day? A. Yes, sir, on my way from work.

"Q. What did Sam Drake say to you when he gave you that letter? A. To give it to Jesse Smith and tell him to give it to Mary Hurt.

"Q. Is Mary Hurt the same Mary Hurt, the wife of Harve Hurt, and that lives next door to Morton Wing? A. I don't know."

W. R. Dennis was intrdouced as a witness for the Commomnwealth and testified as follows:

"Q. You are the marshal of Greenville? A. Yes, sir.

"Q. I will get you to state whether or not while he was in jail, and before his examining trial, you

found this letter addressed to Mary Hurt, Greenville, Kentucky? A. Yes, sir.

"Q. Was it sealed when you found it? A. Yes, sir.

"Q. Where did you find it, Mr. Dennis? A. Found it on the steps going down to the basement of the courthouse.

"Q. Toward the colored toilet? A. Yes, sir.

"Q. Did you open that letter? A. Yes, sir.

"Q. Was this letter that I now hand you, the first word on which is 'Mary,' in that envelope you found? A. Yes, sir.

"Q. Was anything else in it? A. No, sir.

"Q. Will you read this letter to the jury? A. I don't know whether I can or not."

The defendant objected to the letter being read; court overruled the objection and he excepted. The ruling of the court is approved. The letter was read and is as follows:

"Mary, you tell that you met me in your yard. Tell Jesse to tell that the gun shot when I and him was in your door but I jumped out before he did. Tell him to see no gun but the one that Lena had. She said for you all to tell that to clear me. Tell Harve for him to say that he run up, his yard, and I was in five feet of the door. Talk it all of you there tonight."

The attorney for the Commonwealth, Mr. Meredith, said: "I want this letter and this envelope put in evidence." (Letter and envelope filed.)

The defendant, Sam Drake, was introduced as a witness and stated that he did not enter the house of Morton Wing; was not present at the time of the difficulty between him and his wife; did not see either of them at that time; that he fired no pistol and had no pistol and disavowed all knowledge of the homicide and all connection with it; that he had no connection whatever with the letter above referred to; had never seen it before.

A great deal of evidence was introduced for purposes of contradiction after the grounds had been laid therefor.

The court submitted to the jury instructions substantially in the usual form, and some of them are criticised, but without copying them it is sufficient to say that

we have examined them carefully and are unable to see where the defendant's substantial rights have been prejudiced by any of them.

The attorney for defendant vehemently insists that the case should be reversed because Lena Wing admitted that she had sworn falsely at the coroner's inquest and on her examining trial.

The jury heard the evidence; they were the sole judges of the weight to be given to the evidence of each witness; they were the triers of the facts; they found the defendant guilty. The penalty is severe. We feel that we should not interfere with the finding of the jury.

In the case of McCurry v. Commonwealth, 205 Ky. 218, this court, speaking through Judge Thomas, said:

> "Perhaps if we had been on the jury we might not have arrived at the same verdict, but that fact is not the proper criterion by which the justification of the verdict should be measured. If it were otherwise, this court on appeal would take the place of the jury in every case, and where it thought that the verdict was not such as the members would have returned then to order a reversal, but if otherwise to direct an affirmance. Such is not the rule of practice in this or other courts of review, since, under our practice, following the amendment in 1910 of section 281 of the Criminal Code, we are authorized to reverse a judgment as being flagrantly against the evidence only when it appears that it was so much against the weight of the evidence as to shock the conscience and to clearly appear that it was the result of passion or prejudice on the part of the jury."

Finding no error sufficient to authorize a reversal of the judgment, it is affirmed.