## Calhoun v. Commonwealth.

March 15, 1946.

790

E. C. Newlin for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

This is a record of a brutal murder, committed in diabolical malignity and inflicted by savage torture. The State, as organized society, has decreed that the appellant, Edward Calhoun, shall die for it. He and another young man of the same age, twenty-one years, Harold Hollars, had been working on a railroad at Greenfield, Indiana, last summer. After engaging in a fight and otherwise misbehaving, their conviction in the local court was suspended on condition that they leave the community. They had hitch-hiked toward their homes in Pulaski County, via Cincinnati, as far as Nicholasville

on the evening of June 9, 1945, where they continued drinking. They were given a ride by John Hager, of Lexington, down U. S. Highway No. 27 until he should turn off to Herrington Lake where he was going for his wife and daughter. After entering Garrard County, they murdered him.

The men were jointly indicted. Hollars' motion for a separate trial being sustained, the Commonwealth elected to try Calhoun first. The jury disagreed. Five days later Calhoun was again placed on trial and was convicted.

Hollars, introduced by the Commonwealth as a witness, testified that Calhoun had sat between him and Hager as they drove along and that he had fallen asleep and was awakened by the swerving of the automobile. Calhoun then had his arm around Hager's neck and was stabbing him. The car ran off the road into an adjoining field. When it stopped about 60 feet away, Hager got out and ran, but Calhoun overtook him, knocked him down, and again began to cut and stab him. Hollars stated he tried to pull Calhoun off the man, who was then prostrate, when Calhoun cut him, Hollars. Calhoun got Hager's billfold and then made Hollars also go through the man's pockets. They got $2.50. One dollar was given or taken by Hollars. They changed some of their bloody clothing and hid out during the night. The next morning Hager's body was found about 30 feet from the car and the two men were arrested in the neighborhood.

Calhoun's testimony is just the contrary. He testified to almost the same conditions in reverse, laying the more direct guilt upon Hollars. The murder was committed with a barlow knife. When one blade broke the other was opened and used. It appears the knife had belonged to Hollars, but he insisted that Calhoun took the knife when their effects had been given back to them on release from jail in Greenfield. Another witness with whom they met up with in Cincinnati, corroborated Hollars that Calhoun had the knife in his possession in Cincinnati that afternoon. There are other circumstances tending to corroborate Hollars' evidence.

The court appointed Honorable E. C. Newlin, of Danville, to represent the defendant Calhoun, and he has done so with fidelity and ability. Although the Con-

stitution of Kentucky confirms the right of freemen to be represented by counsel when charged with a felony (Section 11), which is interpreted as requiring the court to appoint an attorney for one who is unable to employ counsel, no provision has ever been made by the Commonwealth to compensate him as has been done in some of the other states. Provision has been made for the compensation of other officers of the court (KRS 28.460(1) (a), but not for a lawyer, who bears the heavier responsibility and performs a greater service, both in character and extent. The records are replete with services of appointed counsel as efficient and loyal as those rendered for substantial fees. Often lawyers have been imposed on by men able to pay them. Their only compensation is the sense of having contributed their talents and labors in a public service.

Counsel for the appellant submits that the ends of justice demanded that before he should have been required to stand trial a second time within five days of the first, the Commonwealth should have been directed to bring his co-defendant to trial, who, at that time, again moved for a severance. Counsel points out that until the common law was changed by Section 237 of the Criminal Code of Practice, making it mandatory on the court to grant a separate trial when asked by a defendant, it was a matter of judicial discretion; but argues that discretion with respect to choice as to the order of trial remains. It is yet within the discretionary power of the court to grant a severance when the motion is made by the Commonwealth. Hoffman v. Commonwealth, 134 Ky. 726, 121 S. W. 690; Woods v. Commonwealth, 282 Ky. 596, 139 S. W. 2d 439. But when the court has ordered a separate trial at the instance of a defendant jointly indicted with another neither defendant has a right to regulate the order of the trial or to determine it for the Commonwealth. Drake v. Commonwealth, 214 Ky. 147, 282 S. W. 1066. Under conditions exactly like the present, it was held in Napier v. Commonwealth, 110 S. W. 842, that the complaint of a defendant, tried twice without his co-defendants having been brought to trial, could not be sustained. We need not here express an opinion whether under some peculiar conditions such procedure might not be an abuse of discretion. In this case we do not perceive any violation of the appellant's right.

The indictment appropriately charged the accused, Calhoun, with having been convicted successively of two previous felonies. KRS 431.190. Once in 1938 for storehouse breaking, and again in 1941 for grand larceny. It is alleged that in both cases the appellant had pleaded guilty. It was further recited in this indictment that upon his conviction in 1938 his sentence was probated, but the probation was revoked on July 7, 1941. These records were proved on the trial. The appellant recognizes our several decisions that it is not prejudicial error to include the charge of previous convictions of felonies in an indictment for murder although the minimum penalty, life imprisonment, is the same as where the accused is found to be a habitual criminal. See Mitchell v. Commonwealth, 282 Ky. 844, 140 S. W. 2d 624. But the appellant insists that the reference to revocation of probation was surplusage, not germane, and that it was unfair and prejudicial to read that reference to the jury (Section 219, Criminal Code of Practice), and again to prove the fact, since this in effect told the jury that the defendant "had shown himself especially to be a person utterly incapable of appreciating his obligations" and had "so far gone in crime that he could not appreciate the opportunity to go straight which the court gave him." It was within the discretion of the 'Commonwealth to charge the defendant with being an habitual criminal, and, having done so, it was necessary that the record be pleaded and proven. This included the fact that the judgments of conviction had never been vacated. Merely to have read the judgment in the 1938 prosecution, which showed the probate, would have been to prove an incomplete record. The defendant made that entire record and cannot escape the consequences. As said in Coleman v. Commonwealth, 276 Ky. 802, 125 S. W. 2d 728:

"The animating purpose of inflicting penalties for violation of the criminal law is not, in modern thought, a spirit of vengeance but reformation of the culprit, if it seems possible, and protection of society. So it is that in relatively recent years what is known as habitual criminal statutes have been enacted in order that one who persists in the commission of crime may be put away permanently and the state rid itself of the depravity when its efforts to reform have failed."

We do not think there was prejudicial error here.

The third ground upon which the appellant seeks a reversal of the judgment is the introduction of two photographs of the body of the murdered man. The twenty-seven cuts and stabs upon the body had been fully described by testimony. Their location was not especially material, either to the prosecution or the defense, as in Waters v. Commonwealth, 276 Ky. 315, 124 S. W. 2d 97; and Davis v. Commonwealth, 279 Ky. 127, 129 S. W. 2d 1030. Even so, the pictures do not reveal the wounds in detail. They display the dead man lying on his back in the weeds, with disheveled clothing and bloody body. These exhibits serve no useful or proper purpose and should have been omitted. Doubtless they did tend to arouse the emotions of sympathy for the victim and of passion against the perpetrator of this crime. The question of error turns on their prejudicial nature. There was not a single fact to mitigate this cruel, torturous murder. The record without the pictures revealed that, and we do not conceive that their introduction harmed any of the substantial rights of the defendant.

The State furnished the appellant with counsel who protected all his rights. It gave him a fair trial. He shall have to suffer the extreme penalty, sanctioned by both the law of God and law of man.

Judgment affirmed.