## STATE v. EDSEL MINTON and BEN BULLIS.

(Filed 1 February, 1952.)

**1. Homicide § 2—**

The parties to homicides are divided into four classes: (1) principals in the first degree; (2) principals in the second degree; (3) accessories before the fact; (4) accessories after the fact.

**2. Same—**

A principal in the first degree in the commission of a homicide is the person who actually perpetrates the killing.

**3. Same—**

A principal in the second degree in the commission of a homicide is one who is actually or constructively present when a homicide is committed by another, and who aids or abets such other in its commission.

**4. Homicide § 25—**

In order to sustain conviction of defendant as a principal in the first degree in the commission of a homicide, the State must produce evidence sufficient to establish beyond a reasonable doubt that the death proximately resulted from defendant's unlawful act.

**5. Same—**

It is necessary that the causal relation between the wound and the death be established by medical expert testimony only in those cases where the cause of death is obscure and an average layman could have no well grounded opinion as to the cause, but where the facts in evidence are such that every person of average intelligence would know from his own experience or knowledge that the wound was mortal in character, expert medical testimony is not required.

**6. Same—**

The evidence tended to show that defendant intentionally shot deceased, who fell to the ground, that deceased was found the next morning lying on the ground, that there was a "blood spot" under the body, that the corpse was "frozen stiff" and had a bullet wound clear through the body to the left of the center of the chest and just above the heart. *Held:* The evidence is sufficient for the jury to find that the bullet wound caused the death, and it is immaterial whether the death was immediate or resulted from exposure after defendant had left his victim in a helpless condition on the ground during the frigid night.

**7. Same—**

The evidence tended to show that defendants together accosted their victim during the afternoon, that at that time one defendant in the presence of the other threatened to kill him, that that evening after the victim had stopped his car near another municipality in the county, defendants straightway appeared, alighted, engaged in an altercation with him, and that when he turned his back to return to his car, one of defendants pulled a pistol from his pocket and shot him, causing his death. *Held* sufficient to be submitted to the jury as to the other defendant's guilt as a principal in the second degree.

**8. Homicide § 23—**

In a prosecution for homicide it is competent for the State to introduce in evidence a pistol corresponding in caliber to the bullet inflicting the mortal wound when there is evidence that the pistol was in the possession of one of the defendants both before and after the homicide, notwithstanding the absence of testimony tending to show directly that this particular pistol was actually used in killing the deceased.

**9. Criminal Law § 81c (3)—**

A defendant waives his objection to testimony brought out on his cross-examination by thereafter testifying without objection to the same facts.

**10. Criminal Law § 34h—**

Statements made and correspondence written by defendant in an attempt to induce a material witness for the prosecution to testify falsely in his favor are competent against him as being in the nature of an admission of guilt.

STATE *v.* MINTON.

**11. Criminal Law § 42g—**

On cross-examination of a State's witness, defendant, for the purpose of showing bias of the witness, brought out the fact that the witness· and defendant had engaged in an altercation sometime prior to the trial. *Held:* The State is entitled upon redirect examination to bring out the facts in regard to the altercation even though such testimony would otherwise be incompetent.

**12. Same—**

Where a defendant introduces contradictory statements made prior to the trial by a witness for the prosecution, the State is entitled to show on redirect examination that the witness made the contradictory statements because of threats and bribery, even though such testimony would otherwise be incompetent.

**13. Criminal Law § 81c (3)—**

Where the evidence discloses that the victim and defendant lived in the same vicinity, testimony that sometime prior to the homicide defendant was seen driving his car along the public highway in the wake of an automobile operated by his victim, cannot be held prejudicial.

**14. Criminal Law § 53f—**

A charge that "the attempt" of defendant to prove an alibi does not shift the burden of proof, *held* not error as an expression of opinion by the court, there being nothing in the charge, construed contextually, intimating that the court was of the opinion that defendant had attempted but failed to prove an alibi.

**15. Criminal Law § 53b—**

The charge in this case *held* not subject to the criticism that it placed the burden of proving his alibi on defendant, but, to the contrary, correctly charged that it was incumbent upon the State to prove defendant's guilt beyond a reasonable doubt on the whole evidence and that if defendant's evidence of alibi, in connection with all the other testimony in the case, left the jury with reasonable doubt of defendant's guilt, defendant was entitled to an acquittal.

**16. Criminal Law § 40a—**

Where defendant testifies in his own behalf and also offers evidence of his good character, evidence of his character is competent as substantive evidence and also as bearing upon his credibility.

**17. Criminal Law § 41e—**

Character evidence of a witness not a defendant is competent solely on the question of his credibility.

APPEAL by defendants from *Gwyn, J.,* and a jury, at the August Term, 1951, of WILKES.

Criminal prosecution upon an indictment charging Edsel Minton and Ben Bullis with the murder of Felts Curtis.

The record reveals that the *dramatis personae* were Felts Curtis, a man of the age of forty-six years, who had a wife at home; Edsel Minton,

a man of maturity, who had fathered four children in wedlock; Ben Bullis, another man of maturity, who was keeping house with a paramour; Thelma Wyatt, a fifteen-year-old prostitute; and Mabel Brown, another fifteen-year-old prostitute.

When the cause was called for trial, the solicitor stated that he did not seek a conviction of first degree murder, but did ask a conviction of second degree murder or manslaughter.

The State's evidence was as follows:

1. On the afternoon of 16 December, 1949, Felts Curtis and the State's witnesses, Thelma Wyatt and Mabel Brown, traveled from North Wilkesboro to Elkin and back in a Ford car belonging to Curtis. They stopped at Roaring River on their way to Elkin. Here they were accosted by Edsel Minton and Ben Bullis, who drove up together in an automobile, and invited the girls to abandon Curtis and go with them. Thelma and Mabel declined the invitation on the advice of Curtis, and Minton immediately made this threat to Curtis in the presence of Bullis: "I will get even with you, Felts. I will kill you before midnight tonight." Curtis and the girls thereupon proceeded to Elkin in the Ford, leaving Minton and Bullis at Roaring River.

2. Sometime after 9:00 o'clock p.m. on the same date, Curtis, Thelma, and Mabel traveled in the Ford from North Wilkesboro to a rural section of Wilkes County, where they parked upon a dirt road leading from Highway No. 421 to Suncrest Orchard. Minton and Bullis straightway appeared on the scene in an automobile, which was brought to a stop nearby. Minton and Bullis alighted, and walked to the stationary Ford occupied by Curtis and the girls. Minton opened the door adjacent to Curtis' seat, and Curtis got out. Minton, Bullis, and Curtis went behind the Ford, where "they quarreled for a few minutes." Curtis then turned his back on Minton and Bullis, and undertook to return to his Ford. Minton thereupon pulled a pistol from his pocket and shot Curtis, who fell to the ground.

3. Thelma and Mabel fled the scene at this juncture. They were picked up a few minutes later a short distance away by the automobile used by Minton and Bullis, and stayed with Minton and Bullis from that time until about three o'clock on the morning of 17 December, 1949, when they parted company with these men at North Wilkesboro. At that time Minton made this statement to Thelma and Mabel in the presence of Bullis: "If anybody asks you girls if you saw us, tell them no; if they ask anything about what happened tonight, tell them you don't know anything about it."

4. At seven o'clock on the morning of 17 December, 1949, the dead body of Curtis was found lying beside his parked Ford on the road leading to Suncrest Orchard. The preceding night had been extremely cold, and

the corpse was "frozen stiff." The deceased's clothing was "wet with blood." There was a "blood spot" under the body. The State's witnesses, Sheriff C. G. Poindexter and Coroner I. M. Myers, examined the remains, and found "a bullet wound in Felts Curtis' body. That bullet had passed plumb through his body (to) the left of the center of the chest, just above the heart. The bullet hole in the back was smooth and round. The bullet hole in the front protruded out, and there were little rough edges round the hole." Sheriff Poindexter inserted "a 32 (caliber) bullet in the wound," and observed that it fitted "snugly." It was subsequently ascertained that Minton owned a pistol of foreign manufacture, whose caliber was slightly in excess of 30, as early as November, 1949. This pistol was found in Minton's home on 16 August, 1950, and was exhibited by the State at the trial.

5. Thelma and Mabel did not divulge the matters stated in paragraphs 1, 2, and 3 to the peace officers of Wilkes County until August, 1950. This prosecution was thereupon begun.

The State did not undertake to show by any medical witness that the death of Curtis was caused by the bullet wound described by Sheriff Poindexter and Coroner Myers.

Each defendant asserted his innocence, and presented testimony tending to establish an alibi.

The jury returned a verdict finding each defendant guilty of murder in the second degree, and the judge sentenced each defendant to confinement "in the State's prison for a period of not less than sixteen nor more than eighteen years." The defendants excepted and appealed, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Moody for the State.*

*Trivette, Holshouser & Mitchell and Whicker & Whicker for defendant, Edsel Minton, appellant.*

*Larry S. Moore and F. J. McDuffie for defendant, Ben Bullis, appellant.*

ERVIN, J. The defendants make these assertions by their assignments of error:

1. That the court erred in refusing to dismiss the prosecution upon a compulsory nonsuit. G.S. 15-173.

2. That the court erred in the admission of testimony.

3. That the court erred in its instructions to the jury.

The parties to homicides are divided into four classes: (1) Principals in the first degree. (2) Principals in the second degree. (3) Accessories before the fact. (4) Accessories after the fact. *S. v. Powell,* 168 N.C. 134, 83 S.E. 310.

The State bottoms this prosecution on the theory that Minton is guilty as a principal in the first degree, and that Bullis is guilty as a principal in the second degree.

A principal in the first degree in the commission of a homicide is the person who actually perpetrates the killing, *i.e.,,* the person whose unlawful act causes the death of the victim without the intervention of any responsible agent. A principal in the second degree in the commission of a homicide is one who is actually or constructively present when a homicide is committed by another, and who aids or abets such other in its commission. *S. v. Allison,* 200 N.C. 190, 156 S.E. 545; *S. v. Powell, supra.*

To warrant the conviction of an accused upon a charge of unlawful homicide on the theory that he participated in the killing as a principal in the first degree, the State must produce evidence sufficient to establish beyond a reasonable doubt that the death proximately resulted from his unlawful act. *S. v. Hendrick,* 232 N.C. 447, 61 S.E. 2d 349; *S. v. Palmer,* 230 N.C. 205, 52 S.E. 2d 908; *S. v. Ellison,* 226 N.C. 628, 39 S.E. 2d 824; *S. v. Peterson,* 225 N.C. 540, 35 S.E. 2d 645; *S. v. Everett,* 194 N.C. 442, 140 S.E. 22; *S. v. Johnson,* 193 N.C. 701, 138 S.E. 19. The defendants contend that the State failed to present any testimony at the trial sufficient to support the conclusion that the death of the deceased was caused by the criminal agency of Minton, and that by reason thereof the action ought to have been involuntarily nonsuited as to each of them. They concede that the State's evidence suffices to show that Minton purposely shot and wounded the deceased with a pistol. They insist, however, that the prosecution did not produce any testimony indicating that the deceased died from the pistol wound.

The State did not undertake to show any causal relation between the wound and the death by a medical expert. For this reason, the question arises whether the cause of death may be established in a prosecution for unlawful homicide without the use of expert medical testimony. The law is realistic when it fashions rules of evidence for use in the search for truth. The cause of death may be established in a prosecution for unlawful homicide without the use of expert medical testimony where the facts in evidence are such that every person of average intelligence would know from his own experience or knowledge that the wound was mortal in character. *Waller v. People,* 209 Ill. 284, 70 N.E. 681; *State v. Rounds,* 104 Vt. 442, 160 A. 249. See, also, in this connection: *S. v. Peterson, supra; S. v. McKinnon,* 223 N.C. 160, 25 S.E. 2d 606; *S. v. Johnson, supra; Brundage v. State,* 70 Ga. App. 696, 29 S.E. 2d 316; *James v. State,* 67 Ga. App. 300, 20 S.E. 2d 87; *Brown v. State,* 10 Ga. App. 216, 73 S.E. 33; *Commonwealth v. Sullivan,* 285 Ky. 477, 148 S.W. 2d 343; *People v. Jackzo,* 206 Mich. 183, 172 N.W. 557; *Franklin v.*

*State,* 180 Tenn. 41, 171 S.W. 2d 281; *Mayfield v. State,* 101 Tenn. 673, 49 S.W. 742; *Lemons v. State,* 97 Tenn. 560, 37 S.W. 552; *McMillan v. State,* 73 Tex. Cr. 343, 165 S.W. 576; *State v. Bozovich,* 145 Wash. 227, 259 P. 395. There is no proper foundation, however, for a finding by the jury as to the cause of death without expert medical testimony where the cause of death is obscure and an average layman could have no well grounded opinion as to the cause. *State v. Rounds, supra;* 41 C.J.S., Homicide, section 312d.

When it is tested by these rules, the evidence of the State at the trial suffices to show beyond a reasonable doubt that the death of the deceased was proximately caused by the pistol bullet fired by Minton and the resultant hemorrhage.

The defendants lay hold on the State's testimony that the corpse was "frozen stiff" on the morning of 17 December, 1949, and base this assertion on it: "Thus it appears from the State's witnesses that the deceased might well have come to his death by exposure." The assertion rests on mere conjecture and speculation. Still we deem it not amiss to observe that Minton would not necessarily be exonerated from criminal responsibility for the death of the deceased on the present record even if the assertion had foundation in fact. An accused who wounds another with intent to kill him and leaves him lying out of doors in a helpless condition on a frigid night is guilty of homicide if his disabled victim dies as the result of exposure to the cold. This is true because the act of the accused need not be the immediate cause of the death. He is legally accountable if the direct cause is the natural result of his criminal act. *Williams v. U. S.,* 20 F. 2d 269, 57 App. D. C. 253; *Gibson v. Commonwealth,* 106 Ky. 360, 50 S.W. 532, 20 Ky. L. 1908, 90 Am. S. R. 230; 40 C. J. S., Homicide, section 11b.

In passing from this phase of the appeal, we indulge the observation that good legal craftsmanship will undoubtedly prompt solicitors to offer expert medical testimony as to the cause of death in all prosecutions for unlawful homicide where such testimony is available.

Bullis takes this alternative and secondary position on the assignment of error based on the refusal of the court to enter a compulsory nonsuit: The action should have been involuntarily nonsuited as to him for insufficiency of evidence of aiding and abetting on his part even if the State's testimony is ample to prove that Minton intentionally inflicted a mortal wound upon the deceased in his presence. This position is insupportable. The State's evidence suffices to show beyond a reasonable doubt not only that Bullis was actually present when Minton fatally wounded the deceased, but also that he was present with intent to assist Minton in killing the deceased in case such assistance became necessary and that his presence and purpose were known to Minton, who was encouraged thereby to inflict the mortal wound. *S. v. Allison, supra; S. v.*

*Cloninger,* 149 N.C. 567, 63 S.E. 154; *S. v. Chastain,* 104 N.C. 900, 10 S.E. 519.

Many of the exceptions to the receipt of testimony tendered by the prosecution have been abandoned by the defendants under Rule 28 of the Rules of Practice in the Supreme Court. 221 N.C. 563; *S. v. Carter,* 233 N.C. 581, 65 S.E. 2d 9. Those which have been preserved are reviewed in the numbered paragraphs set forth below.

1. The State was properly permitted to exhibit to the jury the pistol of foreign manufacture identified by the witnesses Ezell Crysel and J. B. Edwards as having been possessed by the defendant Minton both before and after the homicide. Although the testimony did not directly show that this particular pistol was actually used to kill the deceased, the pistol corresponded in caliber with the bullet which inflicted the mortal wound, and might well have been the weapon employed for that purpose. *S. v. Brabham,* 108 N.C. 793, 13 S.E. 217; *Williams v. State,* 73 Fla. 1198, 75 So. 785; *People v. Sullivan,* 345 Ill. 87, 177 N.E. 733; *People v. Kircher,* 309 Ill. 500, 141 N.E. 151; *People v. Selkes,* 309 Ill. 113, 140 N.E. 852; *State v. Green,* 115 La. 1041, 40 So. 451.

2. The State elicited from the defendant Bullis on his cross examination testimony indicating that his paramour "was running around with Edsel Minton" while she was keeping house with him. The court received this evidence against Bullis but not against Minton. The woman was not a witness in the cause, and it is not altogether clear why this testimony was brought out or admitted. Be this as it may, the defendant Bullis waived the benefit of his original objection to its receipt by testifying without objection to the same facts in other portions of his examination. *S. v. Hudson,* 218 N.C. 219, 10 S.E. 2d 730. Besides, the defendant Minton gave exactly the same evidence without objection from Bullis at a subsequent stage of the trial. *S. v. Oxendine,* 224 N.C. 825, 32 S.E. 2d 648.

3. The State introduced in evidence a letter and oral statements of the defendant Minton promising Thelma Wyatt, who was detained in the county jail as a material witness for the prosecution, that he would procure her release from custody and take her anywhere she wanted to go if she would testify that she "didn't know who killed Felts Curtis" and thus "help get him free." The court rightly ruled that this testimony was admissible against Minton but not against Bullis. An attempt by an accused to induce a witness to testify falsely in his favor may be shown against him. Such conduct indicates a consciousness on his part that his cause cannot rest on its merits, and is in the nature of an admission that he is wrong in his contention before the court. *S. v. Smith,* 218 N.C. 334, 11 S.E. 2d 165; *U. S. v. Freundlich,* 95 F. 2d 376; *Doughty v. State,* 44 Ariz. 100, 33 P. 2d 991; *Drake v. Commonwealth,* 214 Ky. 147, 282 S.W. 1066; *Perfect v. State,* 197 Ind. 401, 141 N.E.

52; *Commonwealth v. Min Sing,* 202 Mass. 121, 88 N.E. 918; Wigmore on Evidence, (2d Ed.), section 278; Underhill on Criminal Evidence, (3rd Ed.), section 207. These authorities also support the ruling admitting as against Bullis alone the amatory letter written by him to Thelma Wyatt while he was in jail awaiting trial on the charge of murdering the deceased. When the letter is read in the light of the contemporary circumstances surrounding its author, it is plain that the letter was designed by Bullis to induce Thelma Wyatt, whom he knew to be a principal witness for the State, to fabricate evidence in his favor or to suppress evidence against him. Besides, the contents of the letter were brought out a second time on the cross examination of Bullis without objection from him. *S. v. Hudson, supra.*

4. The defendants undertook to discredit the State's witness Garfield Holloway by drawing from him on cross examination the admission that on some past occasion he endeavored to strike the defendant Minton with a pipe. The court allowed Holloway to testify on his re-direct examination to facts tending to show that he used the pipe merely to repel an unprovoked assault made on him by Minton. The court did not err in so doing. After a litigant brings out on cross examination specific acts of an adverse witness for the purpose of impeachment, the party by whom the witness is called may sustain the character of the witness by eliciting from him evidence explaining those acts, or mitigating their effect. *S. v. Hicks,* 233 N.C. 511, 64 S.E. 2d 871; *S. v. Oxendine, supra; Keller v. Furniture Co.,* 199 N.C. 413, 154 S.E. 674; *Leonard v. Davis,* 187 N.C. 471, 122 S.E. 16; *S. v. Bethea,* 186 N.C. 22, 118 S.E. 800; *S. v. Orrel,* 75 N.C. 317; 70 C. J., Witnesses, section 1134, and cases cited; Wigmore on Evidence (2d Ed.), section 1117. This is true even though evidence otherwise inadmissible is thereby introduced. *Keller v. Furniture Co., supra; S. v. Orrel, supra.*

5. The State's witness Thelma Wyatt gave testimony on direct examination in substantial accord with paragraphs 1, 2, and 3 of the summary of the State's evidence. With a view to her impeachment by self contradiction, the defendants drew from this witness on cross examination admissions that shortly before the trial she made statements out of court denying knowledge of any facts tending to connect the defendants with the death of the deceased. The court permitted this witness to testify on her re-direct examination that her extra-judicial statements were not true, and that she had been induced to make them by threats and offers of bribes made to her by the parents of the defendant Minton. The court rightly ruled that the witness' explanation was competent for the consideration of the jury on the question of her veracity. After the opposing party has sought to impeach a witness by showing that he made statements out of court inconsistent with or contradictory of his testimony at the trial, the witness thus assailed is entitled to support his cred-

ibility by explaining the circumstances under which the statements were made and his reasons for making them. *Queen v. Insurance Co.*, 177 N.C. 34, 97 S.E. 741; *Phifer v. Erwin*, 100 N.C. 59, 6 S.E. 672; *Peck v. Manning*, 99 N.C. 157, 5 S.E. 743; Stansbury on North Carolina Evidence, section 46; Wigmore on Evidence (2d Ed.), section 1044; Underhill on Criminal Evidence (3rd Ed.), section 380. This is true even though evidence otherwise inadmissible is thereby introduced. 70 C. J., Witnesses, section 1332. In applying this rule, courts have held that it may be shown that the witness had been advised (*Watson v. Kentucky & Indiana Bridge & R. Co.*, 137 Ky. 619, 126 S.W. 146, 129 S.W. 341, *Ferris v. Hand*, 135 N.Y. 354, 32 N.E. 129, *Ross v. State*, 60 Tex. Cr. 547, 132 S.W. 793, *Spencer v. State*, 59 Tex. Cr. 217, 128 S.W. 118), or bribed (*People v. Nakis*, 184 Cal. 105, 193 P. 92), or intimidated by third persons to make the inconsistent or contradictory statements. *People v. Frugol*, 334 Ill. 324, 166 N.E. 129; *State v. Marsee*, 93 Kan. 600, 144 P. 833; *Hendrickson v. Commonwealth*, 23 Ky. L. 1191, 64 S.W. 954.

6. The defendant Minton complains of the reception of the testimony of Mrs. Felts Curtis that shortly before 16 December, 1949, she saw him driving a motor vehicle along a public highway in Wilkes County in the wake of an automobile operated by the deceased. Inasmuch as all the evidence in the case shows that the defendant Minton resided in the immediate vicinity, this testimony cannot be held prejudicial to him even if it be taken for granted that it was not relevant to the controversy.

The defendants assign as error the charge as to alibi. The instructions on this subject were as follows: "The defendants, in addition to their plea of not guilty, plead what the law calls an alibi. They rely not only upon their denial of the State's cause, contending that the State failed to prove its cause, but likewise rely upon what the law calls an alibi; and at this time I will instruct you as to what is meant by the term alibi. An alibi simply means that the accused was at another place at the time the crime was alleged to have been committed, and, therefore, could not have committed it. All the evidence should be carefully considered by the jury, and if the evidence on that subject, considered with all other evidence, is sufficient to raise a reasonable doubt as to the guilt of the defendant, you should acquit the defendant. The accused is not required to prove an alibi beyond a reasonable doubt, or by a preponderance of the evidence. It is sufficient to justify an acquittal if the evidence upon that point raises a reasonable doubt of his presence at the time and place of the commission of the crime charged, if you should find that a crime was committed, and you will understand also that the attempt of the accused to prove an alibi does not shift the burden of proof to the defendant. The burden remains on the state to prove the defendant's guilt beyond a reasonable doubt and that at all times."

STATE v. MINTON.

The defendants assert that these instructions are erroneous in two respects. They insist initially that the trial judge described the evidence offered by them for the purpose of establishing their alibis as mere attempts to prove alibis and in that way expressed an opinion that it was factually insufficient for that purpose contrary to G.S. 1-180 when he gave the instruction that "the attempt of the accused to prove an alibi does not shift the burden of proof to the defendant." This contention lacks validity. It ignores the truth embodied in the aphorism of *Justice Holmes* that "a word, is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content, according to the circumstances and time in which it is used." *Towne v. Eisner*, 245 U.S. 418, 62 L. Ed. 372, 38 S. Ct. 158. An "attempt" includes a successful as well as a futile endeavor. *O'Brien v. U. S.*, 51 F. 2d 193. When the trial judge used the word "attempt" in the instruction under scrutiny, he did not intimate to the jury that he was of the opinion that either defendant had attempted but failed to prove an alibi. He merely declared and explained to the jury the sound legal proposition that the fact that a particular defendant had offered evidence for the purpose of establishing an alibi did not shift the burden of proof from the State to him. *Allen v. State*, 70 Ark. 337, 68 S.W. 28; *People v. Lang*, 142 Cal. 482, 76 P. 232.

The defendants assert secondarily that the trial judge erred in the instructions as to alibi because he separated their alibis from the general issue, and charged the jury, in substance, that the burden of proving their alibis rested on them. We do not deem the language of the trial judge reasonably susceptible of this construction. When he told the jury that "the defendants, in addition to their pleas of not guilty, plead what the law calls an alibi," the judge did not repudiate the settled doctrine that an alibi is not an affirmative defense, but is simply a denial of the commission of the crime by the accused. *S. v. Bridgers*, 233 N.C. 577, 64 S.E. 2d 867; *S. v. Sheffield*, 206 N.C. 374, 174 S.E. 105. The judge was merely pointing out these facts: That each of the defendants laid claim to the right to an acquittal on alternative grounds; that the first alternative was that the evidence for the State was insufficient to prove the *corpus delecti;* and that the second alternative was that the defendant was elsewhere at the time of the homicide and by reason of his absence could not have been the person who committed it even if the testimony for the State did suffice to establish the *corpus delecti*. The judge did not charge the jury that the burden of proving an alibi rests on the accused. Indeed, his language was calculated to impress upon the jurors that the State has, in effect, the burden of disproving an alibi. When all is said, the instructions as to alibi come to this:

An accused, who relies on an alibi, does not have the burden of proving it. It is incumbent upon the State to satisfy the jury beyond a reason-

able doubt on the whole evidence that such accused is guilty. If the evidence of alibi, in connection with all the other testimony in the case, leaves the jury with a reasonable doubt of the guilt of the accused, the State fails to carry the burden of proof imposed upon it by law, and the accused is entitled to an acquittal.

This being true, the charge as to alibi is in accord with approved precedents. *S. v. Bridgers, supra; S. v. Jaynes,* 78 N.C. 504.

The defendants also assign as error the instructions on character evidence. When these instructions are read aright, it appears that the court charged the jury as follows on this aspect of the case: (1) To consider the evidence of the character of each defendant as substantive evidence on the question of his guilt or innocence, and also as evidence bearing on his credibility as a witness; and (2) to consider the evidence of the character of any other witness simply as going to his credibility. Inasmuch as each defendant testified in his own behalf and also put his character in issue by offering evidence of his own good character, these instructions were proper. *S. v. Bridgers, supra; S. v. Nance,* 195 N.C. 47, 141 S.E. 47.

The remaining exceptions challenge the charge on the theory that the trial judge expressed opinions on the facts adverse to the defendants, and failed to explain the law arising in the case in an adequate manner. The charge is not justly subject to either of these criticisms. Since these exceptions raise no new or unusual questions, they require no elaboration.

This case illustrates anew the unrelenting truth that "the sin ye do by two and two ye must pay for one by one."

No error.