STATE of Missouri,
Plaintiff-Respondent,

v.

Tommy Lee COVINGTON,
Defendant-Appellant.

No. 10622.

Missouri Court of Appeals,
Springfield District.

Nov. 16, 1977.

---

1. See: McCormick, Damages § 185 (Hornbook Series 1935); 20 Am.Jur.2d Covenants, Conditions, etc., § 144 (1965).

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Robert L. Presson, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

Arthur T. Stephenson, Caruthersville, for defendant-appellant.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

TITUS, Judge.

Tommy Lee Covington (hereinafter defendant) was jury-convicted of second degree murder in the killing of Robert Thompson on August 10, 1976, at Caruthersville. In accordance with the verdict, defendant was sentenced to 15 years' imprisonment.

The sole point relied on is: "The court erred in not sustaining the Appellant's Motion [for judgment of acquittal] *at the close of the State's case* for the reason that the State had failed to show the cause of death of the deceased and in so doing had failed in establishing a corpus delicti." (Our emphasis).

Defendant offered evidence in his own behalf after the state had rested its case. By so doing, defendant waived any objection to the overruling of his motion for judgment of acquittal at the close of the state's case. *State v. Parcel*, 546 S.W.2d 571, 573[3] (Mo.App.1977). Nevertheless, if no submissible case was made for the reason there was insufficient proof of the corpus delicti, then plain error affecting a substantial right is involved from which manifest injustice must have resulted. *State v. Alderman*, 500 S.W.2d 35, 36[1] (Mo.App.

1973). Therefore, we will review the point under Rule 27.20(c), V.A.M.R.

Relative to the single issue involved, the evidence showed this: On the date of his death, Thompson was 28 years of age and weighed 185 pounds. He had once served in the U.S. Navy, was employed as a heavy equipment operator and had been "working regularly . . . every day." Depending on whose testimony the jury believed, defendant went to Thompson's home on the night in question at "around eight-thirty nine" or "nine-thirty, or something to ten." Thompson went outside to talk with defendant. Mrs. Thompson, who remained inside the house, overheard Thompson and defendant arguing for "ten or twelve minutes" before she heard "sort of a scuffle" and then one shot. She immediately summoned a Hayti ambulance by telephone and went outside to where Thompson was "laying [sic] on the grass" complaining of being "real hot" and later saying that "he couldn't feel anything." A police officer arrived and Thompson told the officer defendant had shot him. When the officer asked "Why," Thompson said, "I don't know. I'm dying." En route to a Hayti hospital in the ambulance, Thompson was unconscious but breathing. He expired after reaching the hospital. Mrs. Thompson testified her husband had not been drinking.

The county coroner cursorily examined Thompson's dead body at the hospital morgue "around ten-fifteen or ten-thirty that night." Thompson had been shot once in the left chest, "just about where your shirt pocket would be." Defendant admitted he shot him with a .41 caliber Army Colt revolver which defendant's lawyer gave to the sheriff's dispatcher two days later. The coroner did not probe the gunshot wound. There was no evidence of an autopsy. When asked his opinion as to the cause of death, the coroner's unobjected-to answer was, "It would be death due to gunshot wound."

In homicide, the corpus delicti consists of two elements: (1) the death of the person alleged to have been killed, and (2)

the criminal agency of someone other than the deceased having caused the death. *State v. Lusk*, 452 S.W.2d 219, 221[1] (Mo. 1970). Existence of the first element, as stated in defendant's brief, "is a foregone fact." Defendant asseverates, however, that the second element was not satisfactorily proved because the state did not present any expert testimony as to the cause of Thompson's death. Ignoring the coroner's unobjected-to opinion as to the cause of death, defendant iterates that no autopsy was performed and that the coroner did not probe the wound to determine its depth or the path of the bullet. From this he argues that a single gunshot wound in the left chest cannot be said to be mortal in the sense that death will naturally ensue therefrom. He insists any "infinite number of possible physiological complications" could have caused the death and suggests "heart attack or stroke" brought on by Thompson's argument with defendant, etc.

As approved in *State v. Brandt*, 467 S.W.2d 948, 951 (Mo.1971), it was said in *State v. Minton*, 234 N.C. 716, 68 S.E.2d 844, 848, 31 A.L.R.2d 682, 688 (1952): "The cause of death may be established in a prosecution for unlawful homicide without the use of expert medical testimony where the facts in evidence are such that every person of average intelligence would know from his own experience or knowledge that the wound was mortal in character."

Here we have a young male, 28 years of age and weighing 185 pounds, who was "working regularly . . . every day" as a heavy equipment operator for a highway construction company. He previously had physically qualified to serve in the U.S. Navy. On the night in question, Thompson was possessed of enough physical vigor, so defendant testified, that he "swung on me" at the conclusion of the argument. When Thompson was shot in the left chest at close range with a large caliber revolver he fell and was unconscious until aroused by his wife. Thompson was then "real hot" and moments thereafter "couldn't feel anything." When the policeman arrived, Thompson told him "I'm dying." During the ambulance trip to the hospital, Thompson, though still breathing, was unconscious and died after reaching the hospital. At 10:15 or 10:30 p. m., less than two hours or perhaps less than three-quarters of an hour after the shooting, Thompson was seen dead by the county coroner. The facts were sufficient to justify the jury's obvious conclusion that the bullet fired by defendant into Thompson's left chest caused his death and that death did not result from natural frailties or accident. *State v. Meidle*, 202 S.W.2d 79, 81[5] (Mo. 1947); *People v. Herrera*, 12 Mich.App. 67, 162 N.W.2d 330, 332 (1968); *State v. Minton*, supra, 68 S.E.2d at 848[4]; *Watts v. State*, 210 Miss. 236, 49 So.2d 240, 241[3–4] (1950); *Slaughter v. State*, 21 Ala.App. 211, 106 So. 891, 892[3] (1926); Annot., 65 A.L. R.3d 283, § 3, pp. 292–299.

Judgment affirmed.

All concur.