STATE v. ROBERT THOMPSON, ALIAS JUNE THOMPSON
No. 6816SC450

(Filed 11 December 1968)

**1. Criminal Law § 109— motion for directed verdict — consideration of evidence**

Where defendant offers evidence, the court must consider all of the evidence, including that offered by defendant, upon a motion for a directed verdict.

**2. Homicide § 21— evidence of cause of death**

The cause of death may be established in a prosecution for unlawful homicide without the use of expert medical testimony where the facts in evidence are such that every person of average intelligence would know

from his own experience or knowledge that the wound was mortal in character.

**3. Homicide § 21— sufficiency of evidence of cause of death**

> In a homicide prosecution, evidence of the State tending to show that defendant intentionally shot the deceased, that the bullet entered deceased's body at a point five or six inches below the left arm pit, that deceased spoke only briefly immediately after the shot, and that deceased was removed to a hospital where he was pronounced dead within several minutes after the shot was fired *is held* sufficient to show causal relation between the shooting and death to withstand defendant's motion for a directed verdict.

APPEAL by defendant from *Carr, J.,* June 1968 Session, ROBESON County Superior Court.

The defendant was indicted for murder in the first degree for killing Lee Matthew Hall (Hall) on 4 May 1968. He was tried and convicted for murder in the second degree by a jury. From a sentence of not less than twenty-five nor more than thirty years in prison, he appealed, assigning as error the denial of his motion for a directed verdict of not guilty.

The evidence tends to show the following facts: that Lennis Moore (Moore), the defendant and Hall, the deceased, lived near each other in the town of Maxton, where the defendant and Hall worked in a plywood plant; the defendant borrowed Moore's automobile about 11:00 p.m., 4 May 1968, promising to be gone not over thirty minutes; the defendant failed to return the automobile; after some two hours had elapsed, Moore went looking for it; Moore, accompanied by Hall, was driving Hall's automobile; Moore found his automobile in Maxton in the recreation center yard across from the hotel, but he was unable to start it; he went into a nearby shop where he found the defendant, who upon inquiry denied that anything was wrong with the automobile; and then Moore and the defendant returned to the recreation center yard. During this time Hall had remained sitting in his own vehicle. The defendant went up to Hall and cursed him for bringing Moore to the recreation center yard. Defendant then struck Hall, who, being about forty years of age, six feet tall, and weighing 175 to 180 pounds, was much larger than the defendant. Hall requested the defendant to leave him alone as he was not bothering the defendant. However, the defendant drew a 32-caliber pistol; and, after a few more words, he stepped back and shot Hall. The deceased then stated, "June, you're killing me!" and he requested Moore to take him to the hospital. Moore and the defendant got in Hall's automobile, Moore driving and the defendant holding the deceased in his arms. They arrived at the hospital, a

trip of seven and one-half miles, in about five minutes. Hall, who never spoke again or moved, was pronounced dead at the hospital. The defendant himself testified: "I went to the hospital with him, sat right next to him on the way to the hospital, and had him in my arms when he died." There were no scratches or marks on the body other than the one bullet wound, which was located under the left arm, about five to six inches below the armpit.

*T. W. Bruton, Attorney General, and Millard R. Rich, Jr., Assistant Attorney General, for the State.*

*William E. Timberlake and J. H. Barrington, Jr., by J. H. Barrington, Jr., Attorneys for defendant appellant.*

CAMPBELL, J.

We are presented with the following as stated in the appellant's brief:

> "It is appellant's contention that in this case the State has offered evidence tending to show that deceased was shot with a pistol in the hands of appellant, that the bullet entered the body of deceased at a point six inches below the left armpit and to the rear of the center of the left arm, that deceased spoke only briefly immediately after the shot, that deceased was removed to a hospital where he was observed to be dead some several minutes after the shot; and that there is a total lack of evidence as to the proximate cause of death other than the above circumstances.
>
> Thus, appellant contends that his motion for directed verdict of not guilty entered at the close of the State's evidence should have been granted.
>
> So, also, does appellant contend his motion for directed verdict of not guilty entered at the close of all the evidence should have been granted. The only additional testimony elicited from appellant bearing on the question here argued was his testimony that deceased died 'within five minutes or so of the time he was shot.' "

[1]  Had the defendant rested at the close of the State's case, he would have been entitled to have his motion for a directed verdict considered solely upon the State's evidence. Since, however, the defendant offered evidence, we must consider all of the evidence, including that offered by the defendant.

[2]  There was no expert testimony showing any causal relation

between the bullet wound and the death. In *State v. Minton*, 234 N.C. 716, 68 S.E. 2d 844, Ervin, J., stated:

> "The State did not undertake to show any causal relation between the wound and the death by a medical expert. For this reason, the question arises whether the cause of death may be established in a prosecution for unlawful homicide without the use of expert medical testimony. The law is realistic when it fashions rules of evidence for use in the search for truth. The cause of death may be established in a prosecution for unlawful homicide without the use of expert medical testimony where the facts in evidence are such that every person of average intelligence would know from his own experience or knowledge that the wound was mortal in character."

While the cause of death can be proven without the necessity of an autopsy or the opinion of a physician or other expert witness, nevertheless, we again call attention to the observation of Ervin, J., in *State v. Minton, supra.* ". . . (C)raftsmanship will undoubtedly prompt solicitors to offer expert medical testimony as to the cause of death in all prosecutions for unlawful homicide where such testimony is available." See also *State v. Howard*, 274 N.C. 186, 162 S.E. 2d 495.

[3]   We hold that the evidence, including the shot fired by the defendant, the location of the bullet wound and the circumstances surrounding the death shortly thereafter, afford such causal relation between the shooting and the death as to withstand the motion of the defendant for a directed verdict and to require submission to the jury under proper instruction for a finding of fact as to the cause of death.

Affirmed.

MALLARD, C.J., and MORRIS, J., concur.