State v. Luther

---

STATE OF NORTH CAROLINA v. JAMES ELLIS LUTHER

No. 7420SC173

(Filed 6 March 1974)

1. Homicide § 15— cause of death — absence of expert testimony

The cause of death in a prosecution for homicide may be established without the introduction of expert medical testimony if the wound inflicted by defendant is of such nature that a person of ordinary intelligence would know that it caused death.

2. Homicide §§ 15, 21— cause of death — sufficiency of evidence

In a prosecution for first degree murder where the evidence tended to show that defendant intentionally struck deceased in the face with

an iron pipe, the blow was so forceful that deceased's eyes came out of their sockets, deceased fell to the ground, and by the time deceased's wife and a neighbor carried him into the house he was dead, such evidence was sufficient to withstand defendant's motion for nonsuit, even though none of the State's witnesses testified as to the cause of death, since it tended to show a causal relationship between the intentionally inflicted injury and the death.

Judge CARSON dissenting.

APPEAL from *Braswell, Judge,* 13 August 1973 Session of MOORE County Superior Court.

Defendant was charged in a valid bill of indictment with the first-degree murder of Baxter McKenzie. At trial the solicitor announced that the State would seek a verdict of second-degree murder or any lesser included offense.

The State presented evidence which tended to show that defendant entered the yard in front of McKenzie's house and began arguing with McKenzie, who was sitting on the front porch. McKenzie's wife heard defendant threaten to kill McKenzie if he came into the front yard. McKenzie, nevertheless, picked up a large rubber boot, went into the front yard and struck defendant with the boot. Defendant thereupon hit McKenzie in the face with an iron pipe he had picked up from the front porch. McKenzie's eyes came out of their sockets, he fell to the ground; and he had ceased breathing when Mrs. McKenzie and a neighbor carried him into the house. At the time of the altercation, McKenzie was recovering from the flu, he was weak, and he had heart trouble.

At the close of State's evidence, defendant's motion for nonsuit was denied.

Defendant's evidence consisted of the testimony of Dr. C. Harold Steffee who performed the autopsy on the body of McKenzie. He found a severe degree of hardening of the arteries. Although there was no evidence of a recent clot, the arteries were markedly thickened, and there was calcium in them. There was no evidence of a skull fracture or bleeding inside the brain. In his opinion, the cause of death was hardening of the arteries.

In the original death certificate, Dr. Steffee did not indicate a cause of death. On the first report he prepared for the Office of the Chief Medical Examiner, Dr. Steffee indicated that the probable cause of death was either blunt trauma to the head

or cerebral hemorrhage. In his second report, Dr. Steffee listed the probable cause of death as coronary artery disease, but in his final autopsy report he used the words "It is possible that the increased cardiac demand occasioned by an altercation might have precipitated death."

At the close of all the evidence, defendant renewed his motion for nonsuit, and it was again denied. From the entry and signing of judgment, defendant appealed.

*Attorney General Morgan, by Associate Attorney Heidgerd, for the State.*

*Seawell, Pollock, Fullenwider, Van Camp and Robbins, P.A., by P. Wayne Robbins, for defendant appellant.*

MORRIS, Judge.

Defendant contends that the denial of his motion for nonsuit was error inasmuch as the State failed to produce evidence showing beyond a suspicion or conjecture that decedent's death was proximately caused by acts of the defendant. With this contention we cannot agree.

The test for the sufficiency of the evidence to withstand motion for nonsuit is whether the evidence, when taken in the light most favorable to the State, giving the State the benefit of all reasonable inferences and resolving all doubts in favor of the State, tends to establish that all elements of the offense have been committed. *State v. McNeill,* 280 N.C. 159, 185 S.E. 2d 156 (1971).

The defendant's assignment of error is based on his position that the causal connection between the assault and the death has not been established. Specifically, he contends that the testimony of the medical expert that *"It is possible* that the increased cardiac demand occasioned by altercation might have precipated death" does not sufficiently establish the causal relationship to warrant submission of the case to the jury.

Without deciding whether the medical testimony, standing alone, would be sufficient to establish causation, we hold that there was sufficient evidence of causal connection for the case to be submitted to the jury.

[1] A person is legally accountable if the direct cause of a person's death is the natural result of his criminal act. *State*

*v. Knight,* 247 N.C. 754, 102 S.E. 2d 259 (1958); *State v. Minton,* 234 N.C. 716, 68 S.E. 2d 844 (1952). The act of the accused need not be the immediate cause of death. *Id.* It is well established that the State can establish causation without the introduction of expert medical testimony if the wound inflicted by defendant is of such nature that a person of ordinary intelligence would know that it caused death. *State v. Wilson,* 280 N.C. 674, 187 S.E. 2d 22 (1972); *State v. Howard,* 274 N.C. 186, 162 S.E. 2d 495 (1968); *State v. Cole,* 270 N.C. 382, 154 S.E. 2d 506 (1967). The cases cited above held specifically that in cases where deceased's wound is of an obviously mortal nature, a non-expert witness is competent to offer evidence as to the cause of death. Such is not the case before us.

[2]   None of the State's witnesses testified as to the cause of death. However, the evidence tended to show that defendant intentionally struck deceased in the face with an iron pipe, and that the blow was with such force that it caused deceased's eyes to come out of their sockets. Deceased fell to the ground; and by the time his wife and a neighbor had carried him into the house, he was dead. This evidence standing alone is sufficient to withstand the motion for nonsuit, for it tends to show a causal relationship between the intentionally inflicted injury and the death. *State v. Thompson,* 3 N.C. App. 193, 164 S.E. 2d 402 (1968). While there was no opinion offered as to the cause of death, the rule of *Wilson, Howard,* and *Cole, supra,* is nevertheless applicable. Non-expert testimony—even without an opinion as to the cause of death—can establish a causal connection between an assault and death sufficient to take the State's case to the jury.

No error.

Chief Judge BROCK concurs.

Judge CARSON dissents.

Judge CARSON, dissenting:

I agree with the principles of law enunciated by the majority opinion in this matter, but I feel that they have incorrectly applied the law to the facts in question. As the majority opinion points out, it is well established in this jurisdiction that a layman may testify as to the cause of death when the

facts in evidence are such that every person of average intelligence would know from his own experience or knowledge that the wounds were mortal in character. The majority further states that the wound in this matter was not of such character, but they nevertheless feel that the matter should be submitted to the jury, relying on the case of *State v. Thompson*, 3 N.C. App. 193, 164 S.E. 2d 402 (1968). In the Thompson case the deceased was a healthy man about 40 years of age, standing six feet tall and weighing approximately 180 pounds. He was shot in the chest at close range with a 32 caliber pistol by the defendant. He was immediately taken to the hospital and was pronounced dead on arrival five minutes after the shooting. In that case, of course, expert witnesses would not be needed to establish the cause of the death.

The evidence presented by the State in the instant matter is much less compelling than that of the Thompson case. Only two witnesses testified for the State. The first witness, Alma Mae McKenzie, lived with the deceased and was present when the fight took place preceding the death. She testified, "He looked, his eyes had fell, the pipe had hit him. His eyes had fell out of their place." I suspect that this was a colloquial expression, not to be taken literally. In any event the deputy sheriff who testified next made no mention of the eyes bulging or protruding. His testimony merely corroborated that of Alma Mae McKenzie relating to the affray and added no new facts concerning the death. He did witness the body shortly after the death and made pictures of the body which were introduced into evidence. A motion for nonsuit was made at the close of the State's evidence but was overruled.

The only witness for the defense was Dr. C. Harold Steffee, a physician specializing in pathology. He testified that he had been a physician for 24 years and was the medical examiner for Moore County. He testified that the injury on the head of the deceased was a triangular cut or laceration, about an inch in each limb of the triangle, and of the order of an eighth of an inch in depth. He prepared several reports concerning the death of Baxter McKenzie. When he first viewed the body, he formed a preliminary opinion that the death may have been caused by a cerebral hemorrhage or blunt trauma to the head. This opinion was based on a superficial examination. An autopsy was performed as was customarily done when the death was of a suspicious nature. The autopsy revealed no evidence of skull

fracture. Neither was there any evidence of bleeding inside of the brain. The deceased had some bleeding in the intestinal tract, the origin of which was not immediately apparent. A later miscroscopic study proved that he actually had beginning death of a part of his intestinal tract. The cause of the death was determined to be a severe degree of hardening of the arteries. The deceased had hardening of the arteries of one of the two main branches of the left artery and the entire right. They had calcium in them as well as being markedly thickened. The doctor stated that after conducting the autopsy, he formed an opinion that the cause of death was, in lay terms, hardening of the arteries of the heart. He further stated, "I found no relation between the blow to the head and the death of Baxter McKenzie." He explained that his preliminary diagnosis of blunt trauma or cerebral hemorrhage was based on his initial observations of the body and was made before the autopsy was performed. Following the autopsy he gave the opinion heretofore stated. He testified that an autopsy is customarily performed when foul play is suspected.

It should be further noted that the statement relied on by the majority, "It is possible that the increased cardiac demand occasioned by an altercation might have precipitated death," was not introduced as substantive evidence. The witness stated on cross examination that he had used those words in the final autopsy report. He did not testify on the witness stand that this was a fact; and the final autopsy report, which was in possession of the State, was not introduced into evidence. This statement was not admissible as substantive evidence, but it should have been restricted to a prior inconsistent statement if admissible for any purpose. It should also be noted that defense counsel subsequently made a motion for a mistrial because of the reading by the solicitor of this portion of the final autopsy. Defense counsel stated that the statement "It is possible that the increased cardiac demand occasioned by an altercation might have precipitated death," was followed by a comma and the restrictive clause, "But this is entirely conjecture." While we do not have the final autopsy report in the record, this illustrates the danger of considering the prior statement as substantive evidence. We are unable to determine if the charge to the jury restricted this statement to a prior inconsistent statement, as the judge's charge to the jury is not included in the record.

State v. Luther

On rebuttal, the State introduced into evidence two preliminary reports of the medical examiner. They showed that the injury in question occurred at 9:29 a.m. and that death occurred at 10:10 a.m. The 41 minute time lapse between injury and death further compels medical testimony to establish the cause of death.

The defendant renewed his motion for nonsuit at the conclusion of all the evidence. A thorough discussion of the law pertaining to this factual situation, as well as the reasons for the law, can be found in the case of *State v. Minton*, 234 N.C. 716, 68 S.E. 2d 844 (1952). There Justice Ervin stated at pages 721 and 722:

> The State did not undertake to show any causal relation between the wound and the death by a medical expert. For this reason, the question arises whether the cause of death may be established in a prosecution for unlawful homicide without the use of expert medical testimony. The law is realistic when it fashions rules of evidence for use in the search for truth. The cause of death may be established in a prosecution for unlawful homicide without the use of expert medical testimony where the facts in evidence are such that every person of average intelligence would know from his own experience or knowledge that the wound was mortal in character. (Citations omitted.) There is no proper foundation, however, for a finding by the jury as to the cause of death without expert medical testimony where the cause of death is obscure and an average layman could have no well grounded opinion as to the cause.

Justice Ervin further held at page 722:

> In passing from this phase of the appeal, we indulge the observation that good legal craftsmanship will undoubtedly prompt solicitors to offer expert medical testimony as to the cause of death in all prosecutions for unlawful homicide where such testimony is available.

If we concede that the rules of evidence must be realistic as far as establishing the cause of death is concerned, I feel that it is not reasonable to submit this matter to the jury when the undisputed medical evidence shows that the cause of death was hardening of the arteries and was not caused by the blow to the head of the deceased. Not only has the State failed entirely in its burden of proof, the defendant, carrying the bur-

den improperly cast upon him, has proved to the contrary. I further note in passing that the "good legal craftsmanship" and the "search for truth" referred to by Justice Ervin were certainly not present in the instant case where the State's examiner was present and available to testify, but was not called to do so by the State. Apparently, the autopsy and medical reports were also in possession of the State. In fact, this case clearly illustrates the necessity for medical testimony when the cause of death is not readily apparent.