Mayfield v. State.

MAYFIELD v. STATE.

(*Nashville.* January 21, 1899.)

1. EVIDENCE. *Of cause of death.*

The opinion of a medical expert is not essential, in a murder case, to prove that the death resulted from the wound inflicted by defendant, especially where it appears that deceased was in previous good health, and had proper medical treatment, and there is no suggestion of any other cause of death. That the death resulted from the wound may be shown by circumstances, and it is so shown in this case. (*Post, pp. 675, 676.*)

Case cited: Lemons v. State, 97 Tenn., —.

2. SAME. *Res gestœ.*

A statement of the deceased, made thirty minutes after the difficulty, is not admissible, on behalf of defendant, as part of the *res gestœ*. It is mere hearsay. (*Post, p. 676.*)

3. JUDGMENT. *In criminal case, void.*

A judgment, upon a verdict of guilty of voluntary manslaughter, fixing the term of defendant's imprisonment at one year, is unwarranted and erroneous, the statute prescribing two years as the minimum punishment for this offense. (*Post, pp. 676–679.*)

Cases cited: Wattingham v. State, 5 Sneed, 564; Murphy v. State, 7 Cold., 516; State v. Ragsdale, 10 Lea, 671.

FROM DAVIDSON.

Appeal in error from Criminal Court of Davidson County. A. H. MUNFORD, J., sitting by interchange.

17 P—43

Mayfield v. State.

A. J. CALDWELL and JUDGE QUARLES for Mayfield.

Attorney-general PICKLE for State.

McALISTER, J.   The plaintiff in error was indicted in the Criminal Court of Davidson County for the murder of one James Barnes.   The record discloses that deceased had married a sister of the prisoner, Joe Mayfield, and that the latter had been invited by deceased to stay at his house during his absence in Williamson County.   On the evening of the tragedy deceased returned from Williamson County, accompanied by George Mayfield, father-in-law of deceased, and father of the prisoner, Joe Mayfield.   Deceased had been drinking some—had taken one or probably two drinks of apple brandy, but was not intoxicated.   When the wagon was stopped in front of the house, deceased and his father-in-law, George Mayfield, proceeded to unload a lot of cobs, which they had brought from the country for the purpose of burning in the kitchen stove.   About this time the prisoner came out of the house and walked toward the wagon, when he was accosted by the deceased with the remark, "Joe, you must get another boarding house."   An altercation then ensued, and insulting language was used. The State's witnesses testify that the prisoner applied a most opprobrious epithet to deceased, whereupon the latter got out of the wagon and started toward the prisoner with a cob in his hand.   The prisoner thereupon picked up a stone and threw it at de-

Mayfield v. State.

ceased, striking him in the temple and felling him to the ground. This occurred about 4 o'clock in the afternoon, and that night, about 9 o'clock, Barnes died from the effect of the wound.

It was suggested in argument that no medical expert testified that the death resulted from the wound, and that, on this account, the proof is insufficient to warrant a conviction. The proof is that, up to the time the deceased received this wound, he was in good health and able to engage in his usual occupation. It is not suggested in proof that he died from any other cause, or that his death could have been superinduced by any other cause.

We held, in the case of *Lemons* v. *State*, 97 Tenn., —, a capital case, that it is not essential that the State should, in a murder trial, prove by expert testimony that the death resulted from the wound, when there is no suggestion of death from any other cause, and the deceased was shown to have been of previous good health, and that he received proper medical treatment.

It is shown in this case that deceased was struck on the left side of the head just above the ear, and that the wound produced a dent in the head. We gather from the record that the temporal bone, which is the thinnest bone in the skull, was probably fractured or indented. The deceased soon became unconscious. He was treated by competent physicians, who were called in to see him, and died

at nine o'clock.   We have no doubt, on the record, that deceased died from the effect of the blow delivered by the defendant.

It was next objected that the Court erred in excluding the declarations of deceased made thirty minutes after the difficulty.   This testimony was not offered as dying declarations.   It was an effort to prove by the widow of deceased that thirty minutes after the difficulty deceased said if he could have gotten to him he would have cut his heart out, using an oath and brandishing a clasp-knife which he usually carried.   These statements were not a part of the *res gestæ*, nor dying declarations, but mere hearsay, which were properly excluded by the Court.

A more serious question arises upon the judgment entry in the case.   It recites that "the jury find the defendant guilty of voluntary manslaughter, and assess his punishment at one year's imprisonment in the State penitentiary."   This is an unwarranted verdict, since the minimum punishment for the crime of voluntary manslaughter is two years' imprisonment.   It is true the assessment of a less punishment than that prescribed by law is to the prisoner's benefit, rather than to his disadvantage.

"The rule that a party cannot assign for error that which is for his own advantage applies as well to criminal as to civil proceedings."   *Wattingham* v. *State*, 5 Sneed, 564.   In that case the prisoner was indicted for grand larceny.   The jury found him

Mayfield v. State.

guilty in manner and form as charged in the indictment, but fixed his term of confinement in the penitentiary at two years, whereas, three years was the minimum term for grand larceny. "The conviction," said the Court, "is in form for grand larceny, but in effect for petit larceny, and there can be no doubt that the jury intended to convict him of the lesser offense only. The incongruity on the face of the verdict was assigned for error. . . . The gist of the complaint is that his term of confinement in the State penitentiary is shorter than that prescribed by law; that, instead of two years, it ought to have been three years. The error," said the Court, "is formal merely, and cannot be made available for the prisoner." The Wattingham case, however, is limited and explained in the subsequent case of *Murphy* v. *State*, 7 Cold., 516. Said the Court, viz.: "Larceny is divided into two grades; one is distinguished as grand larceny, the other as petit larceny. The greater offense embraces the lesser, and the punishment prescribed for each is proportionate to the magnitude of the offense, and for the lesser offense the jury were authorized by law to fix the punishment of the accused at two years' imprisonment in the penitentiary, and the Court said this was in effect a conviction of 'the lesser offense only,' and, in that view of the case, held that the error was formal merely and could not be made available for the prisoner. As applicable to the facts of that case, we think the ruling

of the Court was correct, but this record presents a very different case. The accused (Murphy) is indicted for the crime of feloniously breaking open the house of another for the purpose of committing a larceny therein. The law recognizes no different grades in this offense. It is not divided into different degrees, with different punishments prescribed for each, as is the crime of larceny. One specific punishment is prescribed—that is death; but the jury may, in their discretion, commute this to another specific punishment—that is, imprisonment in the penitentiary not less than ten nor more than twenty-one years."

In the Murphy case the jury found the prisoner guilty in manner and form as charged in the indictment, and assessed his punishment at imprisonment in the penitentiary for a period of five years. "The law," said the Court, "prescribes the punishment incident to a conviction of this offense, and neither Courts nor juries can substitute another or different punishment. Having found the defendant guilty of the offense, and having commuted the punishment to imprisonment in the penitentiary, all that remained to be done that the jury was authorized to do was to fix the time at any period their discretion might dictate, from ten to twenty-one years. It follows, then, that so much of the verdict of the jury as proposed to fix the term of imprisonment of the accused at five years was not only erroneous, but wholly unauthorized. The verdict was

a mere nullity, and the Court had no power to pronounce a judgment upon it.''

In the case of *State* v. *Ragsdale*, 10 Lea, 671, defendant, Ragsdale, was indicted for an assault with an intent to commit murder in the first degree. He was found guilty of an assault with an intent to commit murder in the second degree, and the jury assessed his punishment at a fine of $500 and the costs, $———. This latter offense is punished by imprisonment in the penitentiary not exceeding five years, or by imprisonment in the county jail not more than one year, and by fine not exceeding $500, at the discretion of the jury. In that case, the verdict of the jury merely assessed the punishment at a fine. ''The statute,'' said the Court, '' clearly prescribes that the punishment shall be by imprisonment, either in the penitentiary or the county jail. The verdict was, therefore, not warranted by the law, and no judgment could be rendered on it.'' Citing *Murphy* v. *State*, 7 Cold., 516.

We think the verdict in the case at bar falls within the rule announced in the two cases last cited, and is therefore a nullity, upon which no valid judgment could be pronounced. It results that the judgment must be reversed and the case remanded for a new trial.