Jesse James JOHNSON, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Oct. 3, 1978.

Certiorari Granted by Supreme Court Dec. 29, 1978.

Certiorari Dismissed by Supreme Court April 16, 1979.

Robert S. Peters, Winchester, for appellant.

Brooks McLemore, Jr., Atty. Gen., Robert L. DeLaney, Asst. Atty. Gen., Nashville, J. William Pope, Jr., Dist. Atty. Gen., Pikeville, Mike P. Lynch, Asst. Dist. Atty. Gen., Winchester, for appellee.

OPINION

DAUGHTREY, Judge.

The defendant-appellant, Jesse James Johnson, was indicted and tried on a charge of first degree murder. The jury found him guilty of that offense, and, having been erroneously instructed by the trial judge that the minimum penalty for first degree murder was twenty years, the jury set Johnson's sentence at twenty years in the state penitentiary.

■ On appeal the defendant raises multiple assignments of error challenging the sufficiency of the evidence to support the verdict, the validity of the juvenile court's transfer order which precipitated the indictment in this case, and the trial court's failure to suppress evidence of the defendant's statements to police, as well as the imposition of a penalty below the minimum authorized by statute for the offense of first degree murder. We find no reversible error with regard to the first three assignments. However, because the verdict included an unauthorized punishment, it must be considered a nullity, and the judgment entered on that verdict must therefore be reversed and the case remanded for a new trial.[1]

In his instructions to the jury the trial judge charged:

> If you find the defendant guilty of murder in the first degree the law provides that he shall be imprisoned in the penitentiary for life or a term not less than twenty (20) years.

This charge is erroneous on its face, because the penalty applicable at the time of the offense was life or some period of time "over twenty (20) years." *Collins v. State,* 550 S.W.2d 643, 646 (Tenn.1977), construing T.C.A. § 39–2405. In its brief the State acknowledges the existence of this error, but suggests that the Court should modify the judgment to reflect the defendant's conviction of second degree murder and thus permit the twenty year sentence to stand. The State asserts that such a procedure is authorized by *Wattingham v. State,* 37 Tenn. 64 (1857).

---

1. The error in the charge was not brought to the trial court's attention at the time the instruction was given to the jury, nor was it included in the original motion for a new trial. However, upon subsequent motion the order denying the motion for a new trial was amended by the trial judge nunc pro tunc to cover this assignment of error. The purported amendment came after the judgment became final, and for this reason we think it was of doubtful efficacy. Nevertheless, we are convinced that the error here is plain and that it inescapably affected the verdict and tainted the judgment entered thereon. We therefore conclude that it can be reviewed on appeal by this Court, under the rule laid down in *Manning v. State,* 500 S.W.2d 913 (Tenn.1973).

In *Wattingham* the defendant had been indicted for grand larceny, and the jury found him guilty "in manner and form as charged in the indictment." However, the penalty fixed by the jury was below the minimum authorized by statute for grand larceny. The Court recognized the error but said that it was "formal merely, and cannot be made available for the prisoner." Although the *Wattingham* court was apparently prepared to reduce the judgment to petit larceny, they instead reversed and dismissed the case on totally unrelated grounds.[2]

Some dozen years later, the Tennessee Supreme Court was again faced with a verdict fixing punishment at less than the minimum authorized by statute. In *Murphy v. State*, 47 Tenn. 516 (1870), the Court declined to follow the dictum in *Wattingham*, distinguishing that earlier case by noting that there were no grades of offense in *Murphy*, as there had been in *Wattingham*. The unauthorized penalty was a nullity, the *Murphy* court held, upon which no valid judgment could be pronounced.

Still later, in *Mayfield v. State*, 101 Tenn. 673, 49 S.W. 742 (1899), the Court reviewed a homicide conviction involving a penalty for voluntary manslaughter below that authorized by statute. The *Mayfield* Court, while noting the existence of the language in *Wattingham* (which might have been interpreted to allow a reduction of the conviction to involuntary manslaughter), apparently determined not to follow the *Wattingham* dictum. Instead they held, as they had in *Murphy*, that the verdict was a nullity. *See also State v. Ragsdale*, 78 Tenn. 671 (1887).

Later cases are consistent with the holdings in *Murphy, Mayfield,* and *Ragsdale*. *See, e. g., Daniels v. State*, 176 Tenn. 181, 184, 140 S.W.2d 148, 149 (1940) (*dictum*) (fine below the minimum fixed by statute results in a void verdict); *Jenkins v. State*, 509 S.W.2d 240, 247 (Tenn.Crim.App.1974) (verdict fixing punishment below the statutory penalty is a nullity); *Jones v. State*, 526 S.W.2d 130, 133–34 (Tenn.Crim.App. 1975) (twenty year punishment is below statutory minimum for first degree murder, and therefore trial court properly instructed jury to reconsider, because verdict as first reported would be void and no valid judgment could be pronounced thereon).

■ Thus it appears that in all the Tennessee cases after *Wattingham* which deal with this kind of error, the courts have consistently held the erroneous verdict to be void and have reversed the judgment, sending the case back for retrial. This is especially true in those cases where the unauthorized verdict is the result of an incorrect charge by the trial court. *See, e. g., Bowmer v. State*, 157 Tenn. 124, 130, 6 S.W.2d 326, 327 (1928) in which the Supreme Court held that where the "trial judge, by the instruction given, caused the jury to assess punishment not authorized by the statute, the judgment must be reversed and the cause remanded"; *see also, Judkins v. State*, 224 Tenn. 587, 458 S.W.2d 801 (1970).

■ Even in the absence of controlling authority, if we were to undertake reduction of the offense to second degree murder, the twenty year sentence could not be permitted to stand; rather, the case would have to be remanded for a penalty hearing, unless the State agreed to accept the mini-

---

**2.** Wattingham was charged with the theft of property stolen from one Martha Criswell, described in the opinion as a married woman "laboring under the disabilities of coverture, and consequently, incapable of being prosecutrix in the present case," even though she had been deserted by her husband some twelve months before the prosecution commenced and his whereabouts were unknown. 37 Tenn. at 66. This fact, the Court says, "amounts to nothing," because it "is a matter that concerns the public, as well as the person accused of a criminal offense, that there shall be a *responsi-*

*ble* person as prosecutor . . . " *Ibid* (emphasis added). Apparently, under the doctrine of coverture, the deserting spouse was considering "responsible," and, in his absence, one ·could steal with impunity from Mistress Criswell. This situation brings to mind Mr. Bumble's oft-quoted response to the doctrine of coverture. When told that "the law supposes · that your wife acts under your direction," Mr. Bumble replied, "If the law supposes that . . the law is a ass—a idiot." C. Dickens, *Oliver Twist*, Ch. 51, p. 445 (Scribner's, New York 1926).

mum penalty authorized by statute for the lesser grade of the offense (here, ten years). *See generally Huffman v. State*, 200 Tenn. 487, 292 S.W.2d 738 (1956). Furthermore, we think the case is much too serious in nature to warrant such a reduction in the absence of any direct authority permitting modification under these circumstances. The record makes out a clear case of first degree murder, and we have no doubt that this is the offense for which the jury intended to inflict punishment. Their unsuccessful attempt to fix the minimum penalty can probably best be explained by the defendant's young age (he was 17 at the time of the offense). The facts show that he had threatened the victim, his uncle, just a week prior to this offense. The subsequent dispute that led to the victim's murder arose over a bottle of gin which apparently belonged to the defendant. Johnson left the gin temporarily in the backseat of his uncle's automobile, in which he had been a passenger. In the defendant's absence, the victim removed the bottle from the backseat of the car and locked it in the trunk. When the defendant returned, there was an exchange of words about the gin which culminated in the victim's slapping Johnson and ordering him out of the car.

Johnson immediately went to the nearby home of an acquaintance and borrowed a shotgun, ostensibly "to go hunting." He also bought two shells from the owner of the gun. Johnson then went looking for his uncle, and when he found him said, "I want my shit." Johnson fired directly at the victim (the hammer apparently had already been pulled), wounding him fatally. There was evidence to show that when he was hit, the victim was trying to get out of his car, perhaps to retrieve the bottle of gin from the trunk. The defendant then ejected the shell, reloaded and fired again, hitting the top of the victim's automobile.

Before firing the second shot, Johnson said to his brother, at that time also a passenger in the victim's car, "You're next." He ordered his brother to get the gin bottle out of the automobile trunk, and finally left the scene with the bottle and the shotgun, making no effort to aid the dying victim.

When the police arrived, the defendant returned to the scene and volunteered information that he had shot the victim. In the police patrol car on the way to the stationhouse, Johnson said his uncle was always harassing him but that he would not do so again. Johnson also made a statement to a police investigator, in his mother's presence, in which he admitted shooting the victim in order to "get [his] $12.00 off the backseat" of the victim's car. But at no time did he maintain that the shooting was accidental.

At trial Johnson testified that he had lent the victim $12.00 which he wanted back, and that he only meant to scare the victim into returning the money and the gin by use of the shotgun. He said that the gun discharged accidentally, but that he had not told the investigator this fact "because he didn't ask." Likewise, the defendant's brother testified at trial that the defendant's finger was never on the trigger, a fact which he said he neglected to mention at the prior hearing in juvenile court because he was not asked about it.

Although the defendant's trial testimony was probably sufficient in itself to support a finding of second degree murder, there were other strong indications that he acted with the intent, deliberation and premeditation necessary to constitute first degree murder. The jury would have been fully justified in finding Johnson guilty of this offense, and they apparently did so. Were it not for the error in the punishment fixed in the verdict, caused by the erroneous jury instruction, we would have no difficulty in upholding the defendant's conviction.

The judgment is reversed and remanded for a new trial on the charge of first degree murder, as contained in the indictment.

O'BRIEN and DUNCAN, JJ., concur.